## LITTLE et al. *v.* BLOSSMAN et al.

Defendants authorized an agent to make certain purchases for their account, in these words : "We authorize you to purchase for our account to the extent &c., and to ship to our order, and to forward to us the shipping documents, when your drafts for the invoice amount will meet with due honor." The agent, having purchased in conformity to his authority, drew on his principals for the amount of the invoice, and sold the bill of exchange with the bill of lading attached to it. The holders presented the bill of exchange for acceptance, but refused to deliver the bill of lading until payment of the bill of exchange. *Held,* that the drawees were bound to accept only on delivery of the bill of lading.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*Barker,* for the appellants. *Benjamin* and *Micou,* for the defendants.

The judgment of the court was pronounced by

EUSTIS. C. J. This action is brought on certain bills of exchange drawn on cotton shipped from this port to Liverpool, and accompanied by bills of lading. It resembles the suit of *Lanfear et al.* v. *Blossman (ante p. 148),* but in this case the holder of the bills has sued the drawees of the bills, as well as the drawer. An attachment was issued against *De Tastet & Co.,* and they have been made parties defendant. The facts in relation to the refusal to accept the bills unless the bills of lading were delivered up, do not differ materially from those in *Lanfear's* case. *Baring, Brothers & Co.* were the agents for the plaintiffs. But for the course pursued by those gentlemen the bills would have been accepted and paid. The cotton covered by the bills of lading was sold by *Baring, Brothers & Co.,* more than a year after the bills of exchange fell due. The loss on it was considerable, and the plaintiffs seek to recover the deficiency short of the amount of the bills.

The plaintiffs attempt to fix responsibility on *De Tastet & Co.,* by reason of the purchase of the cotton being ordered on their account. The statement in the petition is as follows: After the indebtedness of the defendants to the plaintiffs in the sum of $59,186 87, with interest, is charged, the reason is thus given: "for this, that the said *Fermin De Tastet & Co.* authorized the said *R. D. Blossman* to purchase at New Orleans, and ship for Liverpool, a quantity of cotton for their account, and to draw on them for the cost thereof ; that in obedience to those orders the cotton was purchased and shipped by the said *Blossman,* and bills were drawn by him to pay for the same, to the amount of £11,088 6s. 7d., copies of which are annexed," etc. It is alleged that plaintiffs are the owners of said bills, and that the whole amount thereof is due,

22

by reason of the refusal to accept, pay, &c.   The case was tried before a spe-
cial jury, who found a verdict for the defendants.   The charge of the judge
was excepted to, and, after an unsuccessful attempt to obtain a new trial, the
plaintiffs appealed.

*De Tastet & Co.* did not accept the bills, because the bills of lading accom-
panying them were refused to be delivered up.   If they are to be made liable
at all, it must be by reason of the orders they gave to *Blossman.*   These are
the grounds of the plaintiffs' action against *De Tastet & Co.*, and on this fact the
issue is joined, and the cause has been tried, and must be decided as to their
responsibility.   The plaintiffs propounded interrogatories to *Blossman,* and he
answered that he purchased the cotton under the orders of *De Tastet & Co.*,
and the order itself is in evidence.

Extract from a letter from Messrs. *Fermin De Tastet & Co.*, dated at Liver-
pool, Oct. 18, 1843 :

" The foregoing being our views, we authorize you, in conformity with them,
to make purchases for our account to the extent of 2,500—say two thousand
five hundred bales, gradually as you may have opportunity, and to ship them to
this port to our order, taking care to give us timely notice for effecting insu-
rance, and to forward to us the shipping documents, *when your drafts for the
invoice amount will meet due honor ;* or you will forward said documents through
Messrs. *Peter Harmony & Co.* of New York, when you have occasion to avail
yourself of those respected friends for the negotiation of your drafts, and it is
for our interest.   They have our instructions on the subject."

The bills of exchange were taken with the bills of lading by *Robb & Hoge* of
this city, and remitted to *Nevins, Townsend & Co.* of New York, to be sold
with the bills of lading on their account, without endorsement or guarantee.
There was no agreement as to the bills of lading, but it was supposed they
would follow the bills of exchange.   The plaintiffs purchased the bills of ex-
change, with the bills of lading, in New York, and remitted them to *Baring,
Brothers & Co.* of London, in whose control they both were when the difficul-
ty occurred in relation to the acceptance.

By the plaintiffs' own showing, the bills of exchange represented the price
of the cotton which they were to pay for, and which the plaintiffs' agents held
when they demanded the acceptance.   They held the thing sold, which they
refused to deliver, and exacted the price.   Did *De Tastet & Co.*, by their or-
ders to *Blossman,* bind themselves to any such onerous and apparently unrea-
sonable convention ?   They expressly say that, when advices and the shipping
documents should *be forwarded to them,* the bills of *Blossman* will meet due
honor.   With what propriety can a party seek to fix a loss upon a merchant
giving such orders, when the very basis, or consideration, of the acceptance, is
thus withheld by his agents.   We have already, in *Lanfear's* case, assimilated
the holder of the bill of lading to a vendor.   Now what would be thought of
a vendor, who, under a contract like this, would retain the thing sold, exact
from the purchaser his note for the price, and, on refusal to give it, at his own
convenience, in twelve months or so, sell the thing at a loss, and then sue the
party injured for indemnity.   *Mason* v. *Hunt*, 1 Douglas R. 297.

The plaintiffs have no claim whatever on *De Tastet & Co. ;* there was no de-
fault on their part; the bills were unlawfully protested, and the parties to them
are discharged.

In examining the testimony of the witnesses concerning the usage in New

York and London as to delivering up the bills of lading on acceptance of the bills of exchange, we have come to the same conclusion to which we arrived in the case of *Lanfear*. We have in this case the additional testimony of Mr. *Thomas Baring*, a member of the house of *Baring, Brothers & Co.* He states that, " there is no uniform rule as to the custom of requiring payment under discount of bills drawn from New Orleans on London, to obtain the delivery of bills of lading on cotton against which the drafts are issued, and by which they are accompanied; nor is there any obligation to deliver such bills of lading on the mere acceptance of the bills, without payment of the amount. The rule is uniform to retain the bills of lading until payment in transactions from the East Indies, which has been established and followed without exception by the East India Company."

Mr. *Baring's* opinion is in conformity with the mode of doing business of his house. He thinks it *optional* with the bill holder to give up the bill of lading on the acceptance of the bill of exchange, or to retain it, and that of the propriety of parting with this security the holder is the sole judge.

In relation to the matter of fact of the existence of the custom, we have come to the same conclusion as the witness has. As to the rights of the bill holder we have formed a different opinion, and have given our views so fully in the case of *Lanfear*, that it is unnecessary to restate them, or to examine the questions of law raised by the counsel for the plaintiffs, in his exception to the charge of the judge of the Commercial Court.            *Judgment affirmed.*