THE ONTARIO BANK *against* THE NEW JERSEY STEAMBOAT COMPANY.*

Defendants, common carriers, received from a connecting line, certain bales of wool, which the accompanying freight bills designated as being "deliverable at Coenties Slip, advice to be sent to R. Logan, 6 So. William St., N. Y., order, Ontario Bank." Defendants delivered the goods to the R. Logan designated in the freight bills. *Held*, that they had a right to do so, and that they were thereby relieved from liability for the goods, even although the common carrier originally receiving the goods would not have been authorized so to deliver them.

APPEAL by plaintiffs from a judgment of this court entered on the decision of a judge at trial term.

The action was against the defendants, as common carriers between Albany and New York, for the non-delivery of 200 bales of wool, of the alleged value of $40,000. The complaint

---

* The judgment in this case was affirmed in the Court of Appeals on the grounds stated in the opinion of Chief Justice DALY.

alleged that the " wool was, on divers days and times, between the first day of June, 1865, and the first day of August, 1865, shipped with and delivered to the Coburg & Peterborough Railway Company, or to the Great Western Railway Company, at Guelph, in Canada West, duly marked and consigned to the order of the plaintiff for transportation and delivery at New York city, to the plaintiff or its order." It then alleged that the said wool, so duly marked, was delivered on board defendant's steamboats, at Albany, to be carried to New York, and there delivered to the plaintiff, " or such person or corporation as the plaintiff should order or direct," but that the defendant delivered the same to some other person, and neglected and refused to deliver it to the plaintiff. The answer was a general denial. The facts were these : One Oldknow Pooley, a produce merchant, in Guelph, Canada West, shipped to New York about 429 sacks of wool, by the Coburg & Peterborough Railway and the Great Western Railway, and obtained from those companies about 21 carriers' receipts or bills of lading therefor. The sacks were marked R. L., 6 So. Wm. St., N. Y., deliver or deliverable at Coenties Slip, and advise R. Logan, 6 So. Wm. St. R. Logan, or Robert Logan, was a commission merchant, doing business at No. 6 South William street, New York, and was the correspondent of Pooley, and of this the plaintiff was informed.

Pooley drew drafts or bills of exchange at 30 days against the shipments on Robert Logan, which he procured to be discounted by the plaintiff. These drafts were accepted by Logan. They amounted to $34,000 in gold, and were all paid by Logan at their maturity, at the City Bank, New York, except six, amounting to $8,850.

The wool was received by the defendants at Albany from the New York Central Railroad Company for transportation to New York, and was deliverable there according to directions on bills of charges accompanying the same received from that company, as follows : " Order, Ontario Bank, deliverable (or to be delivered) at Coenties Slip, and advise (or advice to be sent to) R. Logan, 6 South William street, N. Y." All the wool was delivered to Robert Logan.

The judge at the trial also found that, prior to the delivery by defendant to said Robert Logan of the wool for which this action was brought, he had accepted drafts drawn on him by said Pooley as aforesaid, held by plaintiffs, to the amount of $8,850 in gold, all of which, with certain (naming them) bills of lading were still held by them ; of which said several shipments the first, second, fourth, fifth and sixth were received by the defendants for transportation and delivery as aforesaid, and were by them delivered at the city of New York to said Robert Logan, without other special instruction or order from the plaintiffs than as was contained on the directions on the bills of charges aforesaid, or such as in law grew out of the accustomed mode of previous deliveries of similar shipments.

He also found that all of the deliveries of the previous fifteen of said shipments were made by the defendants to said Logan, with the consent or acquiescence of said plaintiffs and said Pooley.

From these facts he concluded as matter of law :

1st. That said Logan, as acceptor of said drafts or bills of exchange, drawn against or upon the security of the shipments of wool in controversy (and so as aforesaid shown to have been received by defendants for transportation as aforesaid), became and was authorized (in the absence of his insolvency) to require a delivery to him of the bills of lading, or carriers' receipts, of the property against which such drafts were drawn, or for which such bills of lading were held, in order to provide for their payment (citing *Lanfear* v. *Blossom*, 1 La. An. 148; *Little* v. *Blossom*, Ib. 169).

2d. That his authority to do so had been recognized and assented to by plaintiffs in the customary course of dealing with respect to all the previous shipments made under similar circumstances, and defendants had a right to rely upon the authority the plaintiffs had thereby conferred on said Logan therein to take possession of the wool in dispute (citing *Drake* v. *Hawks*, 49 Barb. 201; 2 Pars. on Cont. 49, n. 6; Herm. on Estoppel, 46).

3d. That the direction on these several shipments, to advise R. Logan, was an indication and designation of him as

the proper agent of the parties interested in the goods, to be consulted with and direct as to their delivery at New York.

He therefore dismissed the complaint.

*George Wm. Wright* and *Wm. Henry Arnoux*, for appel· lants.

*Charles Jones*, for respondents.

DALY, Chief Justice.—There was no foundation whatever for this action against the defendants. The defendants in delivering goods received from the Central Railroad Company, were guided by the direction on the bills of charges which accompanied them. The freight bill of the wool contained this direction, "Deliverable at Coenties Slip. Advice to be sent R. Logan, 6 S. William street, N. Y. Order Ontario Bank;" in some of them the words, "order Ontario Bank," being at the beginning instead of at the end of the direction. The sacks of wool were marked ⟨ ⟩ R. L.; the first mark being the initials of the shipper Oldknow Pooley, and the other the initials of Robert Logan, the R. Logan referred to in the directions, and the person to whom the wool was delivered by the defendants in New York. The wool was shipped from Guelph and Peterboro, Canada, against drafts drawn by the shipper upon Robert Logan, who was a commission merchant, doing business at No. 6 South William street, in New York, and was the shipper's correspondent. It was shipped by the Coburg and Peterboro and the Great Western Railways, and received by the defendants in due course of transit from the Central Railroad at Albany. The receipts or bills of lading were discounted by the plaintiffs, a banking institution in Canada West, by which the plaintiffs were authorized to receive payment of the drafts drawn upon Logan against the shipments; the title to the property being in them to the extent of the advances they had made. In some of the bills of lading, given at the time of the shipments by the Great Western and the Coburg and Peterboro railways, of which the plaintiff became the holder for value, the wool is acknowleged to have been re-

ceived, addressed to the order of the Ontario Bank, New York. In others, consigned to the order of the Ontario Bank, Guelph ; but all of them contained the direction that the wool was to be left or delivered at Coenties Slip, New York, and that advice was to be sent to " R. Logan, 6 So. Wm. street, N. Y. ; " and it was proved that prior drafts drawn by Pooley upon Logan against shipments of wool, as in the present case, were accepted by him, payable to the Ontario Bank, and were collected for the plaintiffs by the City Bank of New York.

The defendants were simply connecting carriers, receiving the wool from the Central Railroad, at Albany, also a connecting carrier, to be delivered at New York, according to the directions accompanying it. It is unnecessary to discuss what was the obligation in respect to delivery arising upon the bills of lading given by the Coburg and Peterboro and the Great Western Railways. If they, in delivering to the connecting carrier, omitted anything respecting the delivery which should have been communicated to him, and by which omission he, without negligence on his part, delivered the wool to the wrong person, the plaintiffs' remedy is against the prior carrier, whose negligence caused the improper delivery. The defendants had nothing to guide them but the directions contained upon the bill of charges and the marks upon the sacks of wool. This was to deliver the wool at Coenties Slip, in New York, and to advise R. Logan, giving his address, which was in the immediate vicinity of the place of delivery. What were they to infer from this ? Simply that the place of delivery was Coenties Slip, and that R. Logan was the person who was to receive and take charge of the wool. There was no indication to them of any other consignee or person to whom or to whose order it was to be delivered. There is no evidence in the case even that the plaintiffs sent the bills of lading to the City Bank before the non-payment of the drafts. There is nothing except that about six months after the dishonor of the drafts the City Bank delivered the bills of lading to the plaintiffs' attorney, for the purpose of his making a demand of the wool of the defendants. The probability is, that the drafts were sent by the plaintiff to New York for acceptance ; for it appears that

the advances were made by the bank to Pooley at the time of shipment, and that all of the drafts were accepted by Logan, payable in thirty days. It is, therefore, probably the fact that these drafts, as well as the preceding ones which were paid, were sent to the City Bank by the plaintiffs for acceptance and payment.

There is nothing in the evidence showing that the plaintiffs had made any arrangement with any one in New York to re- ceive the wool. It was undoubtedly intended for Logan, who had accepted drafts against its shipment; but there is nothing to show that each shipment, after its arrival, was to be received and kept by any one in New York for thirty days after the acceptance of the draft, to be delivered to Logan only in the event of the drafts being paid. It is sufficient, however, for the decision of this case, that the defendants, as connecting car- riers, delivered the wool according to the directions which ac- companied it when it was delivered to them for its further transmission to New York.

The judgment should be affirmed.

·J. F. DALY, J.—Apart from the right of defendants to deliver the wool in suit to Robert Logan, pursuant to the instructions in the bill of charges, it would seem that Logan was entitled to receive the wool as against the claim of plaintiffs. Logan, as *acceptor* of the drafts drawn by the shipper against the wool, would be, under ordinary circumstances, enti- tled to the goods, that he might reimburse himself (*Little* v. *Blossom*, 1 La. Ann. 169 ; *Lanfear* v. *Same*, Id. 148). When the drafts were presented to the plaintiffs for discount, they were already accepted by Logan. The plaintiffs then knew that Logan had accepted them, relying on the shipments for his reimbursement, that the shipments were the consideration for the acceptances, that Logan was the shipper's correspondent in New York, and that several prior drafts of the shipper had been accepted by Logan and discounted by plaintiffs, that such drafts were drawn against prior shipments ; and therefore that the regular course of business between the parties was for Pooley to ship wool to New York to be sold by Logan, draw-

ing drafts on the latter against the shipments, which the latter accepted in advance of the sales to be made. With this knowledge plaintiffs discounted the drafts, retaining the original shipping receipts. The plaintiffs were not holders of the receipts in good faith as against Logan, whose acceptances they held, made on the faith of the goods mentioned in the receipts. The equity of Logan, as acceptor, was prior in point of time to that of the plaintiffs, as discounters of the drafts, and fully as great in extent. Under the circumstances of this case, it is no answer to Logan's right to say that he yielded his right to the goods as security for his acceptance, by accepting the drafts before receiving the goods. In the course of his previous dealings with the shipper, Pooley, after accepting the drafts and their discount by the plaintiff, he received the wool, and made sales, and paid the drafts he accepted. He had the right to expect the wool in suit, for which he had accepted, would be delivered to him in the same course of dealing. All these transactions, and the usage they established, plaintiffs knew when they discounted, as has been pointed out, and as the usage made the law for the three parties, Pooley, the plaintiffs and Logan, dealing with knowledge of it, plaintiffs knew that Logan would take the goods, and meet his acceptances with the proceeds of the sales he made. And that this was the understanding of the plaintiffs appears very clearly from this fact, that no other consignee of the wool than Logan was, as appears from the testimony, at any time designated either by Pooley or the plaintiffs. As respects prior shipments, Logan took the wool ; and in respect of the wool in suit, the plaintiffs or their agents made no demand of defendants for it until nearly six months after its delivery to Logan. If Logan were not the *consignee* of the wool shipped in the course of all the transactions, it would seem that there was no consignee.

From the above conclusions, based on uncontradicted evidence, I am satisfied that by the usage of all parties, the shipper, the plaintiffs, and Logan, in the transactions in question, and by the assent of plaintiffs, Logan was to receive the wool, as consignee, and the defendants properly delivered it to him.

The judgment should be affirmed for this reason, and for the grounds stated in the opinion of the chief justice.

LOEW, J., concurred.

Judgment affirmed.