27 P. 882 
1 Colo.App. 84
 BABCOCK v. MERRITT et al. 
Court of Appeals of Colorado
October 12, 1891

 
 Appeal
 from superior court of Denver; MERRICK A. ROGERS, Judge.
 
 
 Action
 by Elmer W. Merritt and another against Mollie E. Babcock for
 commissions for the sale of defendant's property.
 Judgment for plaintiffs. Defendant appeals. Reversed.
 
 
 Patterson
 & Thomas, for appellant.
 
 
 Doud &
 Fowler, for appellees.
 
 
 REED,
 J.
 
 
 This
 was an action brought by appellees, Merritt & Grommon,
 against Mollie E. Babcock to recover commissions as
 real-estate brokers upon an alleged sale of property of
 appellant in the city of Denver. Trial to a jury. Verdict and
 judgment for plaintiffs (appellees) for $237.50. There is no
 important conflict in the testimony. At the close of
 plaintiffs' evidence motion for a nonsuit was made on
 behalf of the defendant, which was disallowed by the [1
 Colo.App. 85] court. The right to recover was based upon the
 testimony of plaintiffs, which was not seriously controverted
 by the defense.
 
 
 The
 first important question to be determined is one of
 law,--whether, upon the testimony of the plaintiffs,
 uncontradicted, they were shown to have earned and to have
 been entitled to a commission. The following facts were
 established by the evidence: In the fall of 1885, Mr. Merritt
 met appellant, who said she was quite anxious to sell the
 property; that the price was $7,500, but, if an offer of less
 was made, it might be submitted to her through her agent. He
 says: "I told her that I had a party at that time who
 had been figuring on the property, that I had already shown
 the property to, and that I hoped to complete a sale,"
 etc. Another interview was had two or three weeks later.
 "Mrs. Babcock asked me if I had yet completed the sale
 to this party I had been figuring with before. I told her
 that I had not yet succeeded in completing the sale, but that
 I still had the party in tow, and was trying to sell to
 them." On the 1st of January, 1886, witness formed a
 partnership with Mr. Grommon, and at some subsequent time
 again saw appellant, and informed her of the partnership;
 told her "that we were endeavoring to sell her property;
 had been advertising it, and were trying to complete a
 purchase or sale, and that we should use every means in our
 power;" that he personally never had any further
 conversation with her. The party referred to by the witness
 as being the one to whom he supposed he could sell the
 property was a Mr. J.M. Tompkins, a resident of Cheyenne. The
 last interview between Merritt and appellant seems to have
 been in the latter part of February, 1886. On the 29th day of
 April following, by an arrangement and trade made between Mr.
 Tompkins and appellant, Mr. Tompkins became the owner of the
 property. Mr. Merritt had shown the property to Mr. and Mrs.
 Tompkins with a view of renting it to him. This was in the
 latter part of February or early part [1 Colo.App. 86] of
 March. It appears that while looking through the house for
 the purpose of renting there was some talk of the possibility
 of his purchasing it at some subsequent time. He wanted to
 know if plaintiff thought the owners would take in exchange
 some property which he owned in Cheyenne. He was told that he
 thought not; that the owner wanted the money,
 [27 P. 883] 
 etc.; that he tried to get an offer or proposition from
 Tompkins to trade for or purchase the property, but none was
 made; that Tompkins said that he would rent it for a month,
 and perhaps he would make a proposition to purchase; that was
 the last and only conversation he had regarding the sale. On
 cross-examination, plaintiff said that he tried to get an
 offer, but did not succeed. There is no evidence to show
 either that the appellees were ever authorized to trade the
 property, or sell for anything but cash. It is established by
 the evidence, and uncontradicted, that the price of the
 property was $7,500, and that the lowest offer that would be
 entertained was $7,000 net, or clear of all commissions of
 agents. It is also shown that no talk or conversation had
 between appellees and Tompkins in regard to the probability
 of a trade of property was communicated by plaintiffs to the
 defendant. It is also shown that the offer of $7,000 cash net
 for the property would not be entertained, unless the sale
 was made and the transaction closed before appellant left
 Denver for Omaha, which was to occur, and did, a day or two
 after the last interview. It appears that some time during
 the month of March or early part of April the agent of
 appellant applied to Mr. Grommon to learn the name of the
 party who had talked of trading for the property, and was
 informed that it was Mr. Tompkins, who was renting the
 property, and who had an office in Cheyenne. This appears to
 have been the only participation of appellees in the
 transaction subsequent to the facts stated above. It is shown
 by the testimony of Mr. Merritt that neither he nor his
 partner further participated in nor had any knowledge [1
 Colo.App. 87] of the dealings between appellant and Mr.
 Tompkins until some time subsequent to the transfer of the
 property, when he learned the fact of the sale from the
 county records. After learning the fact, he addressed the
 following letter to appellant: "Denver, Colo., May 19,
 1886. Mrs. M.E. Babcock, Omaha, Neb.--Dear Madam: We are
 pleased to see by the records of Arapahoe county that you
 have sold your property at No. 277 Broadway to Mr. J.M.
 Tompkins, whom we had the pleasure of interesting in the
 purchase, first through his wife, in November of last year,
 soon after you were pleased to place it in my hands for rent
 and sale, and afterwards Mr. Tompkins himself. We see by the
 records that the price which you received for the place was
 $7,000, and we are glad we succeeded in securing a good
 customer. Our commission is regular board rates, viz., 5% on
 first $2,500, and 2 1/2% on excess, making amount due us of
 $237.50, which please remit us at once, and oblige yours,
 truly, MERRITT & GROMMON. By MERRITT." In the purchase
 made by Mr. Tompkins he assumed incumbrance on the property
 of $4,000; gave his note for $1,000; put in one house and lot
 in Cheyenne at an estimated value of $2,000,--making, as
 supposed, the consideration $7,000.
 
 
 There
 are a great many reported cases of suits by real-estate
 brokers to recover commissions. The decisions of the
 different courts are not all in harmony, but there are some
 well-settled rules and legal principles that seem to be well
 founded in reason that are almost universally conceded as
 controlling. Two of them only need be invoked in the
 determination of this case: First. Before the broker can be
 said to have earned his commission, he must produce a
 purchaser who is ready, willing, and able to purchase the
 property upon the terms and at a price designated by the
 principal. Hungerford v. [1 Colo.App. 88] Hicks, 39 Conn.
 259; Tombs v. Alexander, 101 Mass. 255; Barnard v. Monnot,
 *42 N.Y. 203; Satterthwaite v. Vreeland, 3 Hun, 152; Rees v.
 Spruance, 45 Ill. 308; McArthur v. Slauson, 53 Wis. 41;
 [1]
 Wylie v. Bank, 61 N.Y. 415. Second. The broker must be the
 efficient agent or procuring cause of the sale. The means
 employed by him and his efforts must result in the sale. He
 must find the purchaser, and the sale must proceed from his
 efforts acting as broker. McClave v. Paine, 49 N.Y. 561;
 Lloyd v. Matthews, 51 N.Y. 124; Lyon v. Mitchell, 36 N.Y.
 235; Briggs v. Rowe, *43 N.Y. 424; Murray v. Currie, 7 Car. &
 P. 584; Wilkinson v. Martin, 8 Car. & P. 5. Tested by these
 general principles, it at once becomes apparent that no
 commission was earned. The employment was to make a cash sale
 for $7,500, or within a short, definite, and limited time at
 $7,000 net. These were the terms. No purchaser was found by
 the brokers who made any proposition to purchase for cash, or
 any definite proposition to trade property that was or could
 be communicated by the brokers to their principal. With the
 renting of the property to the subsequent purchaser, all
 efforts to sell seemed to have been discontinued, and no
 knowledge of the transaction with the principal was obtained
 by the brokers until the fact of the transfer of the property
 was learned from the county records. In the contemplated sale
 for cash, commissions were contingent upon selling for
 $7,500, or a sum above $7,000 sufficient to cover them. That
 having been the contract proved, and the only one made, it is
 hard to find a legal basis on which to rest the claim for
 commission. Had the purchaser made, through the broker, a
 definite proposition to exchange property, which he did not,
 and the offer had been accepted, commission under the
 contract proved could not be recovered unless the price
 obtained exceeded the last net limit given; and, when it is
 shown that no proposition to exchange was made, communicated
 to, and acted upon by the owner, it is at once obvious that
 the means employed by the [1 Colo.App. 89] brokers, and their
 efforts, did not result in a sale. They found no purchaser,
 and the sale was not made through their efforts as brokers.
 The owner herself subsequently sold the property to the
 tenant. It is true that the brokers gave to the owner the
 name of the tenant who had previously made an indefinite
 statement of his possible willingness to exchange properties.
 But this of itself creates no legal liability to pay
 commissions. It, at most, would only create a moral
 obligation to pay for the information received, if the same
 was beneficial.
 [27 P. 884.] 
 
 They
 had failed to find and produce a purchaser under the terms of
 their employment, and the owner was under no obligation to
 wait longer or indefinitely; and they having failed to
 negotiate a sale or exchange with Mr. Tompkins, or even get
 an offer from him, the fact that the owner subsequently sold
 to the same party to whom they had ineffectually attempted to
 sell has no legal significance. The law allowing
 compensations to this class of agents for supposed
 intervention in real-estate transactions has by many courts
 been strained to its utmost tension. But I can find no
 well-considered case sufficiently broad to allow the
 appellees to recover under the facts in this case. I
 certainly do not feel like extending it. The law should be so
 defined and construed as to afford the owner of property some
 protection against the persistent claims of brokers who seek
 a recovery on purely technical grounds, and at the same time
 assure to the broker compensation for services honestly and
 actually rendered. I cannot indorse the proposition that the
 placing by the owner in the hands of brokers, perhaps two or
 three different firms, property for sale for an indefinite
 time, creates a lien on the property in favor of the broker
 for commissions in case the owner sells himself at some
 subsequent time. In the case of Chandler v. Sutton, 5 Daly,
 117, a case very similar and almost parallel with the one
 under consideration, I find the conclusion of the opinion by
 the eminent judge so pertinent, and my own ideas so much
 better [1 Colo.App. 90] expressed than I can express them
 myself, that I may be pardoned for quoting it: "The
 preposterous proposition of Burnett is that because he was
 employed to sell the defendant's house, and undertook to
 sell it to a particular person, and could not, no sale of it
 could be made to that person thereafter, no matter how
 changed the facts may have been, without paying him a
 commission; that he has only to lodge his caveat to prevent
 the owner from selling thereafter to any one to whom he, as
 broker, tried in vain to sell, unless at the peril of paying
 to him his full commission." There are several other
 errors assigned, notably the instructions to the jury. I may
 be permitted to say that the instructions are in some parts
 particularly faulty in submitting to the jury questions of
 fact not warranted by the evidence. If I did not find the
 judgment of the court erroneous in refusing a nonsuit, I
 should be compelled to reverse the case upon the
 instructions; but, having found that no commission was
 earned, a review of the instructions is unnecessary. The
 judgment should be reversed, and cause remanded.
 
 
 ---------
 
 
 Notes:
 
 
 [1] 9 N.W. 784.
 
 
 ---------