BASSFORD, Respondent, v. WEST, Appellant.

St. Louis Court of Appeals, April 2, 1907.

1. **REAL ESTATE BROKER: Employment as Agent: Introducing Purchaser.** The mere introduction of a purchaser to the owner of land by a real estate agent, where the agent had not previously been employed to sell the property, is not sufficient to entitle the agent to a commission for a sale thereafter concluded between the owner and the purchaser.

2. ————: ————: **Introducing Purchaser: Procuring Cause.** Where a real estate broker has been employed by an owner of land to sell it, he earns his commission by introducing the purchaser to the owner although the owner conducts the negotiations and concludes the sale; the broker in that case is the procuring cause. But where a real estate broker merely introduces a purchaser to the owner of land, which he had not been authorized to sell, he does not thereby earn a commission for a sale subsequently concluded by the owner, unless he influences or becomes the procuring cause of the trade. Where a broker, under such circumstances, introduced a purchaser and then made an agreement with the owner whereby he was to be compensated for assisting in closing the trade, but rendered no service after the agreement was made, he was not entitled to commission.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED.

*Fry & Rodgers* for appellant.

(1)    To entitle a broker to compensation, he must have been employed to negotiate the transaction in connection with which his services were rendered; and the employment must be prior to the service. Under plaintiff's own evidence he is not entitled to recover. Dunn v. Price, 28 S. W. 682; Walton v. Clark, 56 N. W. 40, 19 Cyc., p. 217; Samuels v. Luckbach, 54 Atl. 1091; Addison v. Wannamaker, 39 Atl. 1111; Steidl v. McClymonds, 95 N. W. 906; Veale v. Green, 105 Mo. App. 182;

Crosby v. Ice Co., 76 N. W. 958; Meston v. Davies, 36 S. W. 805; White v. Templeton, 15 S. W. 483; Mechem on Agency, sec. 600.   (2)   In an action by a broker to recover commissions the burden is on him to establish by a preponderance of the evidence that he was employed to sell the property or find a purchaser and pursuant thereto performed the services.   The plaintiff's instructions ignore the question of agency and employment and authorize a recovery without proof of either.   Staehlin v. Kramer, 94 S. W. 785; Walton v. Clark, 56 S. W. 40; Vandyke v. Walker, 49 Mo. App. 381; Jones v. Berry, 37 Mo. App. 129.

*George Robertson* for respondent.

(1)   The plaintiff was the procuring cause of this sale.   He brought the defendant and the purchaser together and was employed by defendant to do so and is entitled to compensation.   Timberman v. Craddock, 70 Mo. 638; Goffe v. Gibson, 18 Mo. App. 1; Milan v. Porter, 31 Mo. App. 563; Henderson v. Mace, 64 Mo. App. 393; Chiles v. Crichfield, 66 Mo. App. 422; Grether v. McCormick, 79 Mo. App. 325; McCormick v. Henderson, 100 Mo. App. 647; Gerhart v. Peck, 42 Mo. App. 644; Crowley v. Somerville, 70 Mo. App. 376; Brennan v. Poach, 47 Mo. App. 290; Wolff v. Rosenberg, 67 Mo. App. 403; Wetzell v. Wagoner, 41 Mo. App. 509; Blackwell v. Adams, 28 Mo. App. 61.   (2)   If the agent introduced the purchaser or gives his name whereby the sale be perfected by the principal, even though the owner vary the terms from the first negotiations, or wholly conducts the negotiations, the agent is entitled to his commission.   Beauchamp v. Higgins, 20 Mo. App. 514; Bell v. Kaiser, 50 Mo. 150; Tyler v. Pane, 52 Mo. 249.

GOODE, J.—Plaintiff, a real estate agent in the city of Mexico, Missouri, obtained judgment against defendant for $133 for a commission alleged to be due for

the sale of property. This appeal was prosecuted from the judgment. We surmise that Taylor, the purchaser of the property, had recently moved to Mexico, though this is nowhere stated. At the time of the transaction in question he was dwelling there in a rented house and was desirous of purchasing a home containing seven or eight acres of land in the outskirts of the city. Mrs. Cordelia Rice, who lived in a western suburb and not far from defendant's property, was related to Taylor and she and her husband, S. M. Rice, wished him to settle in their vicinity. Both Mr. and Mrs Rice called Taylor's attention to defendant's property prior to the first meeting between plaintiff and Taylor, which occurred on Wednesday, September 20, 1905. The Rices had likewise directed West's attention to Taylor as a possible buyer; West had asked Mr. Rice to use his influence with Taylor to get him to buy the property and Rice had spoken to Taylor pursuant to the request. Taylor had in mind another property owned by a non-resident by the name of Gregory, and on Wednesday afternoon, September 20, he and his son entered Bassford's office to make inquiries about it, not knowing, he said, that Bassford was a real estate agent, but for some reason expecting the latter to furnish information regarding the Gregory property. The only conflict in the evidence is in the portion relating to what transpired on said day; and in considering defendant's contention that a verdict should have been directed in his favor, we will accept the evidence of the occurrences in dispute as true in the phase most favorable to plaintiff. On entering the office Taylor inquired about the Gregory property and a conversation ensued between him and Bassford about it and other properties. In a few moments, and while they were still talking about real estate matters, West entered, sat down behind Taylor and soon began to gesticulate to plaintiff in a manner indicating a wish to be introduced to Taylor. In response to these gestures,

Bassford used the first break in the conversation to ask West if he would sell eight or ten acres of his place including the improvements.   West said he would, arising from his chair at the same moment to receive an introduction to Taylor, which Bassford gave, with the remark that Taylor wanted to buy the kind of property West had.   Thereupon West began to descant on its merits, giving as his reason for wishing to sell that the state of his health compelled him to go to California.   After he had talked to West a few minutes, plaintiff spoke aside to him as follows:

"Yes, sir; I spoke to him before he went out; just to him, not so the others could hear.   I told him I would talk now to Mr. Taylor; he had had a talk and probably I had better talk with him.

Q.   He had had a talk and probably you had better have a talk with him?   A.   Yes, sir.

Q.   Then Mr. West left?   A.   Yes, sir.

Q.   Did Mr. Taylor go out then?   A.   Well, right soon I think, as we had agreed upon our appointment.

Q.   Did you agree upon an appointment there in the office?   A.   Yes, or at the office door; somewhere along there."

Plaintiff conversed briefly with Taylor after West had departed about taking Taylor to see the property that afternoon.   Taylor asked what time it was and on learning it was three o'clock, said he had some business to attend to just then, but would return at five o'clock to go with Bassford.   He passed the office a short while after five o'clock, but not seeing Bassford in, went home, intending to return the next (Thursday) morning to go to view the property.   West came back to the office in half an hour after leaving and a conversation ensued between him and plaintiff regarding the sale to Taylor, in which West asked what plaintiff's commission would be for selling the property.   Plaintiff told him the usual rate was five per cent on the first thousand dollars and

two and one-half per cent on the remainder, but as the sale would be a large one, plaintiff would accept two and one-half per half per cent on the entire purchase price. West computed what the commission would amount to at said rate if the purchase price was eight thousand dollars and assented to the charge. About half past five o'clock West called Bassford by telephone and inquired if the Taylors had come to the office as agreed, and Bassford replied that they had not, but he would bring them to West's place if they did; saying at the same time that such prospects for a sale "did not always materialize." The foregoing statement of the facts is according to Bassford's testimony. West denied having indicated by gestures, or otherwise, that he wished to be introduced to Taylor, swore he entered the office, not knowing Taylor was there, to see Bassford about buying a piece of property; admitted he was introduced and that a conversation ensued between him and Taylor regarding a sale of seven or eight acres of his home tract, of which there were thirty acres. He denied having returned to Bassford's office during the afternoon, or agreeing to pay him a commission or telephoning him; swore he never authorized Bassford to act as his agent; that nothing passed between them except the introduction to Taylor and a remark by Bassford as he (West) was leaving the office, that Bassford intended to take Taylor to look at properties that afternoon and might drive him past West's place. On Thursday morning Taylor looked about the town until noon and immediately after dinner defendant drove to his residence with a carriage and took him to view defendant's property, the sale of which was consummated by defendant to Taylor on Saturday, September 23, for $6,650.

We have stated the facts rather minutely in order to point out that, in our opinion, both the petition and the instructions lost sight of the real case and presented one in the form in which controversies over the sales of prop-

erty through the agency of a broker, usually occur. The petition contains two paragraphs, both of which allege that on or about September 20, 1905, plaintiff was engaged in conducting a real estate agency in Mexico, Missouri, selling property for owners and finding purchasers. The first paragraph then states that on or about said date, defendant authorized plaintiff to find a purchaser for his residence and six or seven acres of land; that plaintiff, persuant to said request, found a purchaser for said property and defendant made a sale to the purchaser so found and introduced to defendant; that said sale was made through the direct exertions and agency of plaintiff for $6,650, and defendant agreed to pay plaintiff for said services two and one-half per cent on the amount for which the property was sold; wherefore it was alleged that defendant had become indebted to plaintiff in the sum of $166.25, for which sum judgment was prayed. The second paragraph alleged that on or about September 20, defendant placed his residence and six or seven acres of land in the hands of plaintiff for the purpose of selling same and to find a purchaser; that on or about said date plaintiff did find a purchaser for said property, introduced him to defendant and defendant, on account of said introduction, made a sale to the purchaser so found and introduced by plaintiff; that said property was sold for the sum of $6,650 and the reasonable value of plaintiff's services was five per cent on the first thousand dollars of said price and two and one-half per cent on the remainder; that defendant thereby became indebted to plaintiff in the sum of $191.25, for which judgment was prayed. The answer was a general denial.

The present case diverges from the common type of litigation between brokers and principals in that defendant had not put his property in plaintiff's hands for sale prior to the introduction to Taylor, and never employed plaintiff further than to assist in selling to Taylor. It

was to aid in a specific transaction that plaintiff was engaged. If it is true as plaintiff swore, that the introduction to Taylor was solicited by defendant, it might be considered petty to use plaintiff in getting into a negotiation and refuse to pay a commission for the resultant sale. Nevertheless, merely seeking an introduction was not, in law, equivalent to employing plaintiff to sell the property and were there nothing more in his favor, that incident would have to be regarded as voluntary and insufficient to entitle him to a commission. [McVickar v. Roche, 74 N. Y. App. Div. 397.] The first instruction given on plaintiff's request erred in treating the introduction as enough in itself to support a verdict for the plaintiff if a sale resulted, even though he had nothing further to do with the transaction. The defendant asked several instructions expressing the proposition that it was not enough unless plaintiff, when the introduction occurred, was the agent of defendant with authority to procure a purchaser. The court struck from each of these instructions the proviso that plaintiff must have been an agent with authority to sell, or procure a purchaser, in order to entitle him to a commission, and in lieu of it, inserted a proviso which was, in substance, that he could not recover in consequence of having introduced the parties, unless defendant knew he was a real estate agent and at the time accepted his services in making a negotiation with Taylor for the sale of the property. When a sale presents certain facts, such instructions as the court gave are proper. If a broker finds a customer without previous authority from the owner, the latter by adopting what has been done on his behalf, will make the broker his agent by ratification; which is equivalent to original authority and will bind the owner to pay a commission. It is sometimes said that a prior request for services in this class of cases, as well as others, may be inferred from the conduct of the principal; and among other acts, from his

subsequent assent to beneficial services rendered in his
behalf.    [Kerr v.  Cusenbary, 60  Mo. App. 588, 563;
Painter v. Ritchey, 43 Mo. App. 111.] This does not
mean   that in all cases, the real estate broker can intro-
duce a man as a prospective buyer and thereby bind the
property-owner to pay a commission if a sale follows,
even though the broker had no authority to represent the
owner.  The owner is not to be cut off, by the unsolicited
activity of a broker from his right to sell to whomsoever
will buy.  [McVickar v. Roche, supra.]  To warrant the
inference of a previous request   (or  what is the same
thing to estop the owner from  denying  the  broker's
authority and his right to  a commission)  the owner
must say or do something tending to prove he accepted
the broker as his agent in the matter—something more
than merely selling to the party the broker, while acting
as a volunteer, brought to him.  We have looked into
many cases on this subject and find their doctrine to be
as stated; and it appears from Loving Co. v. Hesperian
Cattle Co., 176 Mo. 330, et seq., 75 S. W. 1095, to be the
law in this state.  [See, too, Hurt v. Jones, 105 Mo. App.
106, 110, 79 S. W. 486; McKennon v. Hope, 118 Ga. 462;
Everett Co. v. Lamont, 107 Wis. 631; Graves v. Bains, 78
Texas, 92; Merrill v. Latham, 8 Colo. App. 263; Down-
ing v. Buck, 98 N. W. Rep. (Mich.) 25; Markham v.
Washburn, 18 N. Y. Supp. 355.]  We are to remember
besides, that plaintiff swore he was expressly empow-
ered to sell to Taylor, and where there is an express con-
tract, one is not to be implied; though it is true that if
the express one has been performed, a recovery may be
had on it in *indebitatus assumpsit*.  [Christy v. Price,
7 Mo. 430; Williams v. Railroad, 112 Mo. 463, 20 S. W.
631.]  According to plaintiff West not only solicited an
introduction, but after talking with Taylor, yielded him
to plaintiff, left the office, returned and made a def-
inite agreement as to the amount of commission to be
paid, and afterwards inquired by telephone whether or

not Taylor had come back to the office to go to view the property. Plaintiff's own statements show he never rendered any services after he was employed; and unless he testified untruly as to the agreement between him and defendant, he gave no assistance which was accepted beyond introducing Taylor and defendant; which as we have seen, was insufficient to raise an inference of employment. So much for the bearing of the evidence on this point. It shows an express agreement, but nothing from which one could be inferred if an express one was not shown.

The petition, too, presents an obstacle to inferring a contract from the circumstances. Both counts declare on a special contract, express in all its terms except that, in the second count, there is no averment of a stipulated rate of commission. In Loving Co. v. Hesperian Cattle Co., 176 Mo. 332, the supreme court rejected the contention that the plaintiff therein could recover a commission for the sale of defendant's property as broker on the theory that, though plaintiff was not authorized to procure the purchaser whom it found, the defendant had sold to said purchaser and had thereby adopted plaintiff's services. The contention was rejected because the petition contained no appropriate allegation, and in the present case not only that reason is good, but, as said, the evidence lends no support to such a theory.

Defendant's counsel insist that a verdict should have been directed for their client because there was no testimony either that plaintiff was employed, or, if employed, that he sold the property. Our conclusion upon this point rendered it unnecessary, strictly speaking, to consider the instructions; but we found it convenient to point out that the theories on which the instructions held the defendant liable were not supported by the facts, as one step toward showing he cannot be held liable on any theory. It is vital to a just determination of

the case to ascertain what the contract was. It was not a general employment to sell the property or find a purchaser, but a special employment with reference to a pending transaction, with no terms furnished the agent. This fact was not kept in mind by the court and the parties. The most plaintiff's testimony goes to prove is that defendant engaged his assistance in the deal with Taylor. That is to say, Bassford was to take Taylor to see West's property and the terms and prices were left in abeyance. We find no difficulty in holding there is evidence of employment to this extent; but the further question of whether there was evidence tending to show plaintiff earned a commission is difficult. As a general proposition if a broker is employed to sell property or to find a purchaser, and thereafter interests some one in the property and brings about a negotiation with him, the broker is entitled to a commission even though the owner conducts the negotiation and consummates the sale. It is essential that the broker should have been the procuring and efficient cause of the sale; but if he finds, by his own efforts, and introduces the purchaser, he is regarded as such cause. [Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 553, 23 S. W. 882; Bass v. Jacobs, 63 Mo. App. 393, 396.] In all the cases we have found in which brokers recovered commissions for the sale of property, on proof of no other services in connection with the sale than finding and introducing the buyer to the owner, it appeared that the owner had previously placed the property in the hands of the agent to sell; that the latter had exerted himself to find a buyer and had found one, and brought him and the owner together with the result that a negotiation ensued which led to a sale. Both on principle and on cases of controlling authority, a broker earns his commission by introducing the customer under those circumstances, even though the bargaining and

124 App—17

selling are done by the owner without further assistance from the agent. [Bell v. Kaiser, 50 Mo. 150; Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 553; Wetzell v. Wagoner, 41 Mo. App. 509; Hayden v. Grillo, 42 Mo. App. 1, 3; Levison v. Lloyd, 46 Mo. App. 452; Bass v. Jacobs, 63 Mo. App. 393, 396; Finley v. Ryer, 79 Mo. App. 604, 608; Merton v. J. I. Case Co., 99 Mo. App. 630, 634; 74 S. W. 434; Lloyd v. Mathews, 51 N. Y. 124, 132; Sussdorf v. Schmidt, 55 N. Y. 319, 322.] If a person employs a broker to sell property, or contracts for any other service without stipulating the time for performance, he is bound to allow the party employed a reasonable time in which to perform. [La Force v. Washington University, 106 Mo. App. 517, 524, 81 S. W. 209; Sibbald v. Iron Works, 83 N. Y. 378; Bryant v. Saling, 4 Mo. 522; Salisbury v. Renck, 44 Mo. 554.] And if the employer prevents performance by taking the matter out of the agent's hands and attending to it himself, or in any other mode, this will be treated as equivalent to performance by the agent. [Halpin v. Manny, 57 Mo. App. 59.] The purpose of these rules is to insure the broker his commission when the purchaser was procured by his exertions. [Stine v. Blesch, 42 Mo. App. 578; Brennan v. Roach, 47 Mo. App. 290; Henderson v. Mace, 64 Mo. App. 393; McCormick v. Henderson, 100 Mo. App. 647, 75 S. W. 171.] The idea is that when the broker, pursuant to an employment, has enlisted the interest of a possible buyer, the broker is not to be cut out of his chance to earn a commission by effecting a sale in the time allotted or a reasonable time; and if during such period the owner takes up and concludes the negotiation, he must pay a commission. On looking at the facts before us in the light of those rules, we find plaintiff's own testimony shows he lent no assistance in making the sale to Taylor, except introducing the parties prior to his employment. Whatever was said to Taylor about the property was

said by West, and after the introduction plaintiff had no talk with him except to make an appointment to go to see the property that afternoon. It is evident that he exerted no influence over Taylor's mind. We have already seen the plaintiff did not, pursuant to a previous employment, interest Taylor as a purchaser. Plaintiff had nothing to do with defendant's property until after he introduced Taylor which was, in legal effect, a voluntary and gratuitous act. Moreover, Taylor had been found and called to West's attention as a possible purchaser by Rice, who, at West's request, had already brought the latter's property to Taylor's attention. And if what has been done by Rice had made no impression on West, neither does it appear that what Bassford did made any impression on him. Whatever favorable impression he received of West's property was imparted by what the latter said, either in Bassford's office or subsequently. It is certain that Bassford did not effect the sale nor can he be termed the procuring cause of it in any just sense. He was engaged to co-operate with West by taking Taylor to see the property on Wednesday afternoon, when, presumably, terms would be given by West if Taylor was pleased with it. The defendant said or did nothing which stood in the way of his (West's) seeking Taylor the next day and selling to him. What had happened already was not so far due to Bassford's influence or efforts that defendant was bound to leave the affair in his hands or pay a commission if a sale occurred without his further help. He had telephoned defendant that such prospect of selling as was afforded by what Taylor had said often proved to be disappointing. Now when he failed to bring Taylor to see the property on Wednesday afternoon, or the next morning, we cannot see that defendant encroached on his rights by renewing the negotiation in person. No doubt it would have been in better taste to have notified Bassford and acted through him. But the case must stand on the legal

rights of the parties and if we are correct in our opinion, the judgment should be reversed. It is so ordered. All concur.