ED ENGLISH v. WILLIAM GEORGE REALTY COMPANY.

Decided April 7, 1909.

**1.—Broker—Commissions.**

In the absence of any usage or contract express or implied, or conduct of the seller preventing the completion of a bargain by the broker, an action by a broker for his commissions will not lie until it is shown that he has effected or produced a sale of the property. It is not enough that the broker has devoted his time, labor or money in the interest of his employer, unsuccessful efforts however meritorious afford no ground of action; and where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own.

**2.—Same—Sale of Land.**

Where the broker under the contract had no exclusive agency for sale of land, the owner was not liable for commissions on a sale made by himself in good faith without the agency of the broker.

**3.—Same.**

Under the contract the broker was to receive a certain commission for bringing the owner a purchaser for land at a certain price per acre, or as near that as possible, and was to submit a good bid if he had it. He brought one, C., to see the owner and the land, and C. through the broker made an offer at less than the listed price, which the owner rejected, and there all efforts of the broker to effect a sale ceased. The offer to purchase by C. was made with the intention of buying for himself. About one year later the owner in an accidental meeting with a member of the firm of which C. was a member, gave said firm the exclusive agency to sell for a fixed period, for a fixed price, for a certain commission, this being regarded as an option, the intention of the member being to sell at a profit to certain parties. Failing a sale, the firm made an offer to the owner to buy at a certain price per acre net, the same price offered by C., and the owner accepted and a sale was made to the firm, which then had a member who was not such when C.'s offer was made. Held, that the broker was not the procuring cause of the sale, though but for his attempt to sell to C., the sale to the firm would not have taken place, and he could not recover.

**4.—Same.**

If without effecting an agreement or accomplishing a bargain, the broker

abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. In such event it matters not that after his failure and the termination of his agency, what he has done proves of use and benefit to the principal.

Appeal from the Forty-fifth Judicial District, Bexar County. Tried below before Hon. J. L. Camp.

*F. Vandervoort.* and *Terrell & Terrell,* for appellant.—The court erred in rendering judgment for plaintiffs, because the uncontroverted evidence shows that the plaintiff company was not the procuring cause of the sale made by defendant English to his codefendants. Before a real estate broker can recover commissions on a sale of land he must not only prove employment, but also that he was the procuring cause of the sale being made. Duval v. Moody, 24 Texas Civ. App., 627; Wilson v. Ellis, 106 S. W., 1152; Burch v. Lawhon, 109 S. W., 399; Edwards v. Pike, 107 S. W., 586; Gamble v. Grether, 83 S. W., 306; Quist v. Goodfellow, 8 L. R. A. N. S., 153; Crowe v. Trickey, 204 U. S., 228, 51 L. ed., 454; 2 Clark & Skyles on Agency, p. 1674; Frenzer v. Lee, 90 N. W., 914; Fairchild v. Cunningham, 88 N. W., 15; Francis v. Eddy, 52 N. W., 42; Babcock v. Merritt, 27 Pac., 882; Putnam v. How, 40 N. W., 258; Moore v. Cresap, 80 N. W., 398.

*Hicks & Hicks,* for appellee.—A real estate broker, when employed by the owner of land to procure a purchaser therefor, is entitled to his commission if the procuring cause of said purchase, even though the sale be afterwards made by the owner to the purchaser. Pierce v. Nichols, 110 S. W., 206; Bowman v. Southwestern Land Co., 107 S. W., 585; Wilson v. Clark, 35 Texas Civ. App., 92; Byrd v. Frost, 29 S. W., 46; Bowser v. Field, 17 S. W., 45; Graves v. Bains, 78 Texas, 94; Hoadley v. Bank, 44 L. R. A., 321.

NEILL, ASSOCIATE JUSTICE.—This appeal is from a judgment recovered by William George and D. C. Richey, partners under the firm name of William George Realty Company, against Ed English for effecting the sale of certain lands of the latter.

The undisputed evidence shows that on April 4, 1907, Ed English sold to Mathew Cartwright, L. D. Cartwright, Lane Taylor and W. B. Lupe, partners, doing business under the firm name of Cartwright, Taylor & Lupe, 4,137 7-100 acres of land for the sum of $41,370, which was at the rate of $10 per acre. In the spring of 1906, appellees, as real estate brokers, under a contract with appellant to procure him a purchaser for the land, listed the same at $12.50 per acre, the agreement between the parties being that appellant should pay appellees a commission of five percent of the amount for which the land should be sold, if they would bring him a purchaser at the price of $12.50 per acre, or as near that as possible, and that if they got a bid to submit it to appellant.

The principal question of fact is whether appellees were, under this agreement, the procuring cause of the sale. It is undisputed that, in pursuance of the agreement, on or about February 12, 1907, the appellee, George, acting for and in behalf of his firm, induced Mathew

Cartwright, one of the purchasers, to go with him from Carrizo Springs to appellant's residence situated on the land, where he introduced him to appellant with a view of effecting a sale of the premises; that on that day the appellant, for the purpose of selling to him, rode over the land with Mr. Cartwright and showed it to him; that Cartwright became interested in the matter and asked appellant what was the least price he would sell for, and was answered: $12.50 per acre. Nothing more was said between the parties regarding the sale. But, in returning to Carrizo Springs, Cartwright authorized George to inform appellant that if he would take $10 per acre he would consider the matter of its purchase after a more thorough examination of the premises. This proposition was submitted by George to appellant, and was declined. Nothing more was said or done between Mathew Cartwright, in person, and the appellant regarding the sale of the land, until its sale to the firm, of which Cartwright was a member, was agreed upon and consummated.

L. D. Cartwright is the son, and Lane Taylor and W. B. Lupe are the sons-in-law of Mathew Cartwright. After the latter's return from Carrizo Springs to San Antonio, the place of business of his firm, he informed Taylor and Lupe about the English place, telling each of them that, from what he had seen of it, it was a good piece of property. Afterwards, Lane Taylor met appellant at Cometa, near where the latter lived, was introduced to him and gave him his card; and a short time afterwards Taylor returned from San Antonio to Boynton's place, about a quarter of a mile from English's, for the purpose of transacting some business there with another party; and, on the trip, went from Boynton's to English's place where he met him and, after inspecting the land, entered into a written agreement (which he calls an option) with him, which is as follows:

"March 22, 1907.
"Cartwright, Taylor & Lupe,
    "San Antonio, Texas.
"Dear Sirs:

"You are hereby appointed my exclusive agents to sell the following described property: About 4,000 acres located in Zavala County, Texas, about one-fourth mile southeast of Cometa; price $11.25 per acre, one-third cash, balance four equal notes payable in one, two, three and four years at six percent interest, interest payable each year. In event of sale during term of this agency I agree to pay you a cash commission of twenty-five cents per acre. My title is good. I agree to furnish an abstract of title. This agency to continue until April 7, 1907, at noon. Duplicate received.

"Ed English."

About ten days after this option, as it is called, was given, L. D. Cartwright and W. D. Lupe, the other two members of the firm, went from San Antonio, via Eagle Pass, to English's place, and after a two-days' examination of the land offered him $10 per acre for it, which English then declined. Cartwright and Lupe then told him that if he took a notion to accept that price to call them up at Eagle Pass that evening. When they left, English talked the matter over with his

wife and they concluded to accept their offer, and English then 'phoned Cartwright at Eagle Pass that he would be there next day. Accordingly, he overtook Cartwright and Lupe at Eagle Pass and went to San Antonio with them and closed the sale at $10 per acre.

The question is, do these facts show that the plaintiffs were the procuring cause of the sale made by the defendant, English, on April 4, 1907, to Mathew Cartwright, L. D. Cartwright, Lane Taylor and W. B. Lupe? The only one of these parties ever introduced by either of plaintiffs to the defendant, as is shown from the undisputed facts, was Mathew Cartwright, which was on February 12, 1907. He was not willing to buy the land at the price plaintiffs were authorized to sell it for, nor was defendant willing to take the price that would induce Cartwright to more thoroughly examine the land in order to determine whether he wanted to buy it. Thus ended all negotiations between Cartwright, on the one hand, and either plaintiffs or English on the other, in regard to the sale of the land. The plaintiffs, as the agents of English, never brought English and either of the other parties together, never entered into any negotiations with either of them or renewed their efforts with Mathew Cartwright to effect a sale of the land. In short, the sale was brought about and finally consummated entirely independent of the agency of plaintiffs or either of them, all the negotiations having originated between and been conducted to a finality by the defendant and the purchasers of the land.

The burden was upon plaintiffs to prove not only that they were defendant's agents to effect the sale, but that they were the procuring cause of the sale which was consummated. The fact that they had, at a time several months prior to the time the sale was effected, introduced one of the purchasers to English and made a fruitless effort to sell the land to him—there being no further negotiations between them—is not sufficient to warrant a finding that they were the procuring cause of the sale which was actually made. As is said in Duval v. Moody, 24 Texas Civ. App., 627: "It is now the well-settled doctrine that in the absence of any usage or contract, express or implied, or conduct of the seller preventing the completion of the bargain by the broker, an action by the broker for his commissions will not lie until it is shown that he has effected or procured a sale of the property, and it is not enough that the broker has devoted his time, labor, or money in the interest of his employer, as unsuccessful efforts, however meritorious, offer no ground of action, and that, where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own. In such cases he loses his labor and efforts which he staked upon success, and if there is no contract there is no reward, as his commissions are based upon the contract of sale." See also Newton v. Conness, 106 S. W., 893; Burch v. Hester, 109 S. W., 400; Mueller v. Bell, this day decided (117 S. W., 993.)

In addition, we think that, although it can be said that but for George's action in attempting to sell to Cartwright, the sale to Cartwright, Taylor & Lupe would not have taken place, yet the sale that was made was not a sale to George's customer, Cartwright. Not only did the endeavor of George to effect a sale to Cartwright fail and come to an end, but the sale that was afterwards consummated was not

made to his customer. It nowhere appears that Cartwright alone had the ability to make the purchase, and there is no evidence of fraudulent conduct on the part of English in refusing to sell to Cartwright and afterwards selling to the four persons composing the firm of Cartwright, Taylor & Lupe. Hence, we concluded that we erred in affirming the judgment of the District Court, wherefore the motion is granted, our judgment affirming that of the trial court set aside, our original opinion withdrawn, the judgment of the District Court reversed, and judgment is here rendered that plaintiffs (appellees) take nothing by their suit and that defendant (appellant) go hence without day, and that he recover of and from the plaintiffs all costs (both in the District Court and this court) in this behalf incurred.

*Reversed and rendered.*

ON MOTION FOR REHEARING.

In order that the bearings may not be lost sight of in this case it will be well to keep in view the contract made by and between appellant and William George. We take the statement of the latter as being correct: "The contract or agreement between us was that as agent I was to receive a commission of five percent from Mr. English for bringing him a purchaser, the price to be $12.50 or as near that as possible, and that if I had a good bid to submit it, but it was listed at $12.50." Appellee did not get a purchaser at that price or any other, and the only service performed by him was to take a man to appellant who refused to give the price demanded and who made an offer considerably less than that for the land, which was refused by appellant. Appellee did nothing more towards securing a purchaser for the land. The man who offered $10 an acre for the land was taken to appellant by appellee in January, 1907. He was Mathew Cartwright, and the uncontroverted testimony shows that he was out hunting a tract of land, not for the firm of which he was a member, but for himself, and he stated, "Had I bought the English place it would have been for myself." Mathew Cartwright told the members of the firm, as composed at that time, of the English land, but said: "I did not recommend them to buy it, and it was not contemplated that they would buy it at that time." Afterwards Taylor, a member of the firm to whom the land was eventually sold, went to Carrizo Springs to show another piece of land to a prospective purchaser, and without any intention of buying the English land. The firm, to which a new member had in the meantime been added, had not in any manner considered the question of buying the land. The firm was engaged in the real estate business. Taylor met appellant by accident, and in the conversation with him merely solicited the agency for sale of the land. Afterwards Taylor was again in the vicinity of the land and obtained an agency, also denominated an option, to sell the land. The agency was an exclusive one. The option or agency was obtained by Taylor for his firm, not with any intention of buying for his firm, but under the belief that the firm had men in North Texas to whom it was thought the land could be sold. Taylor swore: "Neither time did I go down to Cometa for the purpose of purchasing this land for Mathew

Cartwright, or for any one else. There was no request or agreement on part of Mathew Cartwright that I should go and see if I could buy it. There was no idea in my mind the first time I went there to see Mr. English of buying that land. After he gave me the exclusive contract when I came back I showed it to the members of the firm, and in the meantime we heard from our North Texas parties that, owing to a recent marriage, or something of some of the partners, he wouldn't be able to come down, and then we all got to discussing the proposition, and decided if we could buy it at a reasonable figure we would go in and buy it." There was no connection whatever between the visit of Mathew Cartwright to the English land and the accidental meetings of Taylor and English which resulted in the sale of the land to the San Antonio firm.

Did William George procure and take to appellant a man who was ready, able and willing to buy the land on the terms fixed by him? Every particle of the testimony answers in the negative. Did the visit of Mathew Cartwright, in company with George, to the house of appellant in January or February, or his offer to buy, if he liked the land, at a lower price than that fixed by appellant, have any causal connection with the subsequent visits of Taylor and the final purchase of the land by a firm of which Mathew Cartwright was a member, but a different firm from the one of which he was a member at the time he visited appellant? The uncontroverted testimony answers the question emphatically in the negative. Then if appellant is to be bound it must be upon the ground that he induced Mathew Cartwright to go to see appellant and to make a conditional offer of a sum considerably less than that for which appellant had agreed to sell, and that the land was afterwards sold, not through that visit, to a firm of which Mathew Cartwright at that time was a member. Appellee does not claim that he procured a purchaser in the person of Mathew Cartwright, who was ready, willing and able to buy on the terms fixed by appellant, for if it did it would base its right to recover on a refusal of appellant to sell to Mathew Cartwright. Appellee seeks a recovery alone on the ground that it was the procuring cause of the sale made by appellant in April, 1907.

It is evident from the testimony that appellant did not at any time contemplate selling his land at $10 an acre and paying any one a commission out of that sum. He rejected such an offer when made by George, and it was the definite agreement when he sold the land at $10 an acre that no commissions should be deducted from it. All his conversations with George in regard to a commission were made on a basis of a maximum price of $12.50 an acre and not less than $10 an acre net to him.

William George was never given the exclusive agency for sale of the land, and selling as he did, in good faith, without the agency of appellee, appellant is not liable for the commission. The offer procured by George was fully and finally rejected by him. That offer involved the payment of five percent commissions and he refused it that time and ever afterwards. George produced a buyer on terms different from those proposed by appellant, and he is not entitled to commissions because a sale was afterwards made, even though it had been on terms

substantially the same as those proposed but rejected by appellant. Upon what principles of right and justice a sale, made on different terms proposed by one prospective purchaser to another purchaser, would entitle appellee to a recovery of commission has not been made to appear in this case. The underlying basis of all claims by brokers to commissions is that they were the procuring cause of the sale. No matter how great the exertions of the brokers may have been, they can not recover for their services if the contract of sale was made without their intervention. (Clark & Skyles on Agency, sec. 776, pp. 1670-1671, and authorities cited.)

It devolved upon George to show not only that he introduced Mathew Cartwright to appellant, but affirmatively that the purchaser was induced to apply to appellant through the means employed by the broker. Not only was this not done, but on the other hand it was made to appear by all the evidence on the subject that there was not the remotest connection between the sale and the visit of Mathew Cartwright to appellant. This was clearly decided in a New York case in which the facts were much stronger in favor of the broker. (Wylie v. Marine Nat. Bank, 61 N. Y., 415.) In that case the property was valued at $80,000 and the broker obtained an offer for $75,000 which was rejected by his principal. The property was afterwards sold to the same party for $80,000 and the court held that the broker was not entitled to his commissions. The court said: "He failed to find or produce a purchaser upon the terms prescribed in his employment, and the bank was under no obligation to wait any longer, that he might make further efforts."

In the case of Sibbald v. Bethlehem Iron Co., 83 N. Y., 378, the following language, aptly appropriate in this case, was used: "It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest, but all that gives him no claim. It was part of his risk that, failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors." The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.