BARNES v. BEAKLEY.    (No. 6294.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 26, 1919. On Motion for Rehearing, July 2, 1920.)

1. **Evidence** &#8660;213(1)—**Evidence as to admissions by defendant and offers of payment held admissible in action for compensation.**

In a real estate broker's action for $750 compensation earned on the exchange of land, evidence that after the deal was consummated defendant agreed to pay plaintiff the amount sued for, but later declined to do so, and of admissions by defendant that he offered plaintiff $300, and later $375, *held* admissible, in so far as it tended to show that defendant recognized the importance and value of plaintiff's services.

On Motion for Rehearing.

2. **Brokers** &#8660;53—**Broker may be procuring cause, though he merely directs.**

A real estate broker may be said to be the procuring cause of a trade, and entitled to a commission, though he communicates only with his principal, and not with the other party to the contract.

3. **Brokers** &#8660;88(3)—**Whether mere information as to location of land was procuring cause of trade held for jury.**

Where a real estate broker, with whom defendant had listed lands for exchange, communicated to defendant information as to the location of lands such as defendant desired to obtain, and defendant subsequently exchanged his property for such land without any further investigation on plaintiff's part, evidence tending to show that the information given to defendant was the primary, proximate, and procuring cause of the consummation of the trade *held* to make a question for the jury.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by J. A. Barnes against H. N. Beakley. Judgment on an instructed verdict for

defendant, and plaintiff appeals. Reversed and remanded on rehearing.

T. F. Mangum, of San Antonio, for appellant.

Denman, Franklin & McGown, of San Antonio, for appellee.

MOURSUND, J. J. A. Barnes sued H. N. Beakley for the reasonable value of his services in securing the exchange of 20 acres of land belonging to Beakley, alleging that the land had been placed with him as a real estate agent for sale or exchange by Beakley, and that the reasonable value of his services was $750, and that Beakley accepted his services, knowledge, and information, and the trade of said 20 acres was consummated. Beakley pleaded a general denial. A verdict was instructed in favor of Beakley.

The testimony of Barnes is to the effect that Beakley had listed with him for sale or exchange 20 acres of land situated at Coleman, Tex., at a price of $15,000; that he had tried to effect an exchange with Jay Adams, but was unable to interest Beakley in the particular tract of land which Adams wanted to dispose of; that he told Beakley that Adams' son, Carlton, owned 560 acres of land near Robstown, of the kind desired by Beakley, and pointed the same out to Beakley on the map, and went into details concerning the same; that he made a date with Beakley to take him to Robstown from Corpus Christi, where the conversation occurred, the next morning, to see the land; that when he called to see Beakley the next morning the latter had left Corpus Christi; that about 30 days later he learned that Beakley had traded his Coleman tract of 20 acres to Carlton Adams at the price of $15,000, in part payment for said 560 acres near Robstown, for which he paid, according to the recital in the deed, $30,000; that the reasonable value of his services to Beakley was $750. Afterwards, according to Barnes, Beakley agreed to pay him $750, but later declined to do so. Beakley disputed this, but admitted offering Barnes $300, and later $375.

[1] This testimony concerning what took place afterwards is entitled to consideration upon the cause of action alleged, in so far as it may tend to show that Beakley recognized the importance and value of the information given him by Barnes. A discussion between Beakley and Jay Adams concerning the prospects of effecting a trade between them led to the introduction of the subject of Carlton Adams' ownership of the 560 acres. The testimony of Jay Adams is to the effect that Beakley stated that Barnes had mentioned Carlton Adams' land. Jay Adams actively assisted in bringing about the trade between Beakley and his son. It appears from Beakley's testimony that Adams claimed his son and Beakley owed him $1,500 commission, and, while Beakley did not think Adams was entitled to any commission from him, he compromised with Adams by paying him $200. Beakley went with Jay Adams and Carlton Adams to Coleman, and showed them his land, and Jay Adams and Beakley went to Robstown to enable Beakley to inspect the land owned by Carlton Adams. Carlton Adams did not have his land on the market, and in fact there was a verbal agreement by him with his father, who had given him the land, under which he was precluded from selling it until it should reach a value very much in excess of the price he accepted. Jay Adams released his son from such agreement and advised him to sell on account of certain financial difficulties. Barnes did not have any exclusive agency to sell or exchange Beakley's land.

The only issue to be determined is whether this evidence will support a finding that Barnes was the procuring cause of the exchange by Beakley of his 20 acres of land. It is not contended that Barnes ever spoke to Carlton Adams, or in any way induced said Adams to trade for Beakley's land. In order for Barnes to recover, he must show that he complied with the contract upon which he sued. He did not introduce to Beakley any prospective purchaser, but merely told him that a certain man owned land which he thought Beakley would find desirable. No effort or exertion on his part contributed in the least to make Carlton Adams assume the attitude of a prospective purchaser of the Coleman land. Whether or not he could have induced or brought about a desire on the part of Carlton Adams to obtain such land is a matter resting in conjecture. Proof that information has been given, which through a combination of circumstances became beneficial, does not, we believe, meet the requirements necessary to show that Barnes complied with the obligations of his contract. The following authorities are deemed persuasive of the correctness of our conclusion that the court did not err in instructing a verdict: English v. Williams, 55 Tex. Civ. App. 137, 117 S. W. 996; Hall v. Ware, 148 S. W. 1197; Babcock v. Merrit, 1 Colo. App. 84, 27 Pac. 882; Whewell v. McLernon Realty Co. (Sup.) 120 N. Y. Supp. 72; Johnson v. Seidell, 150 Pa. 396, 24 Atl. 687; Bassford v. West, 124 Mo. App. 248, 101 S. W. 611.

The judgment is affirmed.

### On Motion for Rehearing.

After much consideration of the appellant's motion for rehearing and the answer thereto, in the light of such additional authorities as we have been able to find, we conclude that we erred in our holding to the effect that the court was correct in instructing a verdict for appellee. In 4 R. C. L. p. 320, § 58, we find the following:

"The general rule deducible from the decisions upon the question would seem to be that,

if there is nothing peculiar in the contract of employment, it is not necessary that the broker should negotiate the sale, when he has found, or procured, or if he has introduced, or given the name of, a purchaser 'who is able, ready, and willing to purchase the property upon the terms named by the principal, and the principal has entered into negotiations with such purchaser, and concluded a sale with him; and in such cases the broker ,has performed his contract and is entitled to his commissions."

This statement is copied from the note on pages 612, 613, 44 L. R. A., where many cases are cited.

[2, 3] We conclude that we placed too much stress upon the fact that the agent did not communicate with Carlton Adams, and did not bring him to Beakley, or cause him to communicate with Beakley. We conclude that there may be a case where the agent can be said to be the procuring cause, when he communicates only with his principal, and that there is evidence in this case tending to show that the information given by Barnes to Beakley was the primary, proximate, and procuring cause of the consummation of the trade.

We therefore grant the motion for rehearing, set aside our former judgment, and enter judgment reversing the judgment of the trial court and remanding the cause.