## WICHITA FALLS MOTOR CO. v. TINDALL.

### No. 13713.

Court of Civil Appeals of Texas. Fort Worth.

March 4, 1938.

Rehearing Denied April 15, 1938.

Carrigan, Hoffman & Carrigan and James E. Prothro, all of Wichita Falls, for appellant.

T. R. Boone and Mathis & Caldwell, all of Wichita Falls, for appellee.

SPEER, Justice.

J. L. Tindall sued Wichita Falls Motor Company, a corporation, in a district court of Wichita county, for commissions alleged to be due him under a contract, in the form of a letter written to him by the president of the motor company.

The parties will here carry the same designation of plaintiff and defendant, respectively, as in the trial court.

Plaintiff alleged that he had previously been employed by one Gruver in connection with a manufacturing plant established to make a certain patented article to be used with a combine in harvesting grain, that on account of business reverses, the company ceased to operate, and that Gruver, the patentee of the machine, asked plaintiff to see if he could find some concern that would manufacture the article, called by the parties a "Grain pan and straw rack" or the

"Gruver units." Plaintiff alleged he took the matter up with defendant, and, finding its officers interested, went to Wichita Falls and displayed the blueprints and all data necessary to enable defendant to estimate the cost at which it would be willing to manufacture the units; the negotiations were carried on through personal visits by plaintiff to defendant's place of business and by correspondence; that on October 6, 1934, defendant wrote plaintiff the following letter:

"Mr. J. L. Tindall

"Dear Sir:

. "You will understand that our net price on the grain pan and straw rack is $65.00 each. We agree that if the business is placed with us to pay you $10.00 each on the units as a commission for securing the business for us.

"Wichita Falls Motor Co.

"By W. O. Beeman, Gen'l. Mgr."

Further allegations are made that plaintiff accepted said letter, acted on it as the contract between himself and the defendant, and thereafter; by his efforts and negotiations, procured the business of manufacturing said units to be let to the defendant; that in pursuance of the business so procured, the defendant did manufacture 80 of said units and thereby became liable to plaintiff for the sum of $800, for which amount plaintiff sued and prayed judgment.

Defendant answered by general denial and specially that, at the time it wrote the letter pleaded and relied upon by plaintiff, the plaintiff had represented to it that Gruver or the owner of the letters patent covering the "Units" would place in some local bank $3,750, to be held in escrow until a specified number of the units should be manufactured, at which time it should receive payment from the escrow deposit, but that no such deposit was made, and that, because of such failure, the contract as contemplated between the parties was never consummated. It further specially answered that no units were ever manufactured by it as a result of the agreement expressed in the letter and the understanding between the parties with reference thereto. It prayed that plaintiff take nothing and that it go hence with its costs.

A trial was had to the court without the intervention of a jury. Judgment was entered for plaintiff for $625 upon a finding that defendant had manufactured 62½ units. From this judgment the defendant has perfected this appeal.

Four assignments of error are urged in the brief of defendant; they all complain of the insufficiency of the testimony to support the judgment. The substance of the first three assignments may be said to be, that the evidence is insufficient to authorize the court: (a) To find that plaintiff was the procuring cause of the transaction involved; (b) to find that plaintiff was instrumental in bringing together the defendant and the party with whom it eventually contracted to manufacture the units; (c) to find and conclude that plaintiff began and prosecuted to a conclusion the deal contemplated by both parties to the alleged contract; and the fourth assignment asserts that the testimony adduced was sufficient to show plaintiff did not engineer or bring to a conclusion any deal between defendant and the person with whom it ultimately contracted.

The plaintiff (appellee here) first moves in his brief to strike defendant's (appellant's) brief, for the reason it is in violation of rule 30 for Courts of Civil Appeals, which requires the appellant to embrace within his brief propositions upon which the appeal is predicated, and that they shall be germane to one or more of the assignments of error presented. It is contended that the propositions contained in defendant's brief are not applicable to the case at bar. They do refer to the assignments of error relied upon, and, if the latter present matters complained of as errors committed by the court, they constitute a substantial compliance with the rule. If the motion is to be construed as complaining because there is no proposition in the brief applicable to the assignments of error urged, then that contention cannot be sustained for the reason article 1757, Vernon's Texas Civil Statutes, as amended by the 42d Legislature in 1931, c. 45, does not require the brief to contain such a proposition. This court, and other appellate tribunals, have, since the passage of that statute, welcomed a continuation of the practice of making brief and concise propositions pertaining to assignments of error, which tend to portray quickly and concisely the matters especially complained of by the assignment. They are helpful to the court, and, after all, this is the ultimate purpose of a brief. The Supreme Court has, in recent months, established a

rather liberal construction of the rules laid down for briefing cases, in respect to matters set out in this motion, and; irrespective of the additional work it entails upon appellate courts, we shall follow its lead. Ellis v. Jefferson Standard Life Ins. Co., Tex.Civ.App., 99 S.W.2d 953, writ dismissed, but see footnote of comment by Supreme Court; Gavin v. Webb, Tex.Civ.App., 99 S.W.2d 372, writ dismissed, but reasons explained in a per curiam opinion, same case, Tex.Sup., 101 S.W.2d 217. The motion to strike briefs must be overruled.

The assignments of error, as above indicated, challenge the sufficiency of the testimony to support the judgment rendered. We have carefully read the question and answer statement of facts, and find the testimony, if believed by the court sitting in lieu of a jury, supports the findings of the court upon which he necessarily entered judgment.

It appears from this record that, at the time plaintiff's employment with the Gruver Company ceased, Mr. Gruver, who originally procured letters patent for the "Gruver Units" and was then a part owner thereof, induced plaintiff to make an effort to find some one who would manufacture the units, and told plaintiff the owners could afford to pay $75 for the making of each unit; that plaintiff wrote the Chamber of Commerce at Wichita Falls, inquiring for a concern engaged in such business, and his letter was handed to defendant's representative, who in turn wrote plaintiff that his concern was interested in the proposition; plaintiff called in person on defendant and they discussed the project in detail; plaintiff advised defendant that the owners would finance the contract in some suitable way, suggesting that a deposit of from $3,750 to $5,000 could be deposited to guarantee the cost of making the units when completed; several plans of financing the proposition were discussed, this being one of them; Beeman, defendant's president, did not demand such a deposit but said that any order he would accept would be all right; within a few days defendant wrote the letter to plaintiff above set out; plaintiff took the letter to Gruver and told him of the negotiations; Gruver could not then finance the matter; the president of defendant, at a later date went with plaintiff to see Gruver, and the proposition was again discussed between the three; Gruver went to Oklahoma City with a view to getting another concern to manufacture the

units; Tindall furnished to Gruver and Harris at that time drawings and manufacturing plans, to take with them while on that mission; a company at Oklahoma City, contacted by Gruver on this trip, was interested, but found it could not manufacture the units and in turn desired to have it done; being advised by Gruver of the negotiations with defendant, either Gruver or a representative of the Oklahoma City company called defendant on the telephone, and the latter's president went there to negotiate further about the work; defendant never heard of Gruver nor his patent until the negotiations were had with Tindall; these conversations resulted in defendant being employed by the Oklahoma company to manufacture the units at a price of $75 each. Under this agreement, defendant manufactured 65½ units.

During the time defendant was manufacturing the units, it employed plaintiff as a mechanical engineer, in connection with other contracts that were being performed by it for a Mr. James. The record shows that the president of defendant told a Mr. James that he was indebted to plaintiff for commissions on the job here under consideration, and expected to pay him and get rid of him, but it is not contended that the statement was ever carried out.

██ It is fundamentally true that, before a party is entitled to brokerage, he must have a contract, express or implied, with his principal. The contract relied upon by plaintiff is not denied by defendant, except to the extent that, in writing the letter, it is claimed that both parties understood that, as a prerequisite to the contract, plaintiff would have Gruver or his associates deposit in escrow a sufficient amount of money to guarantee the price of manufacturing the units.

The controlling feature of this appeal is whether or not plaintiff was the moving, procuring, and efficient cause of the business of manufacturing the units to go to defendant. If he was, then defendant owed him $10 commission on each unit made. It was held in the early case of Graves v. Baines, 78 Tex. 92, 14 S.W. 256, by the old Commission of Appeals, that "If the purchaser is found by the broker's efforts, and through his instrumentality, he is entitled to compensation although the owner negotiates the sale himself. Nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor

that the broker should be personally acquainted with the purchaser, but in such cases it must appear that the purchaser was induced to apply to the owner through the means employed by the broker." ·

The testimony in the instant case shows that after plaintiff, defendant, and Gruver had conferred, Gruver went to Oklahoma City to see a manufacturing concern, to induce it to make the units; upon being advised that company could not make them, Gruver told the manager of his and plaintiff's negotiations with defendant, and believed defendant could be employed to manufacture the units at a price which the Oklahoma company could afford to pay, and thereby work out a contract between that company and Gruver on a royalty basis. At Gruver's request on the telephone, defendant's president went to Oklahoma City the next day and a contract was made between him and the Oklahoma City company, by which the business of the manufacture of the units went to defendant. This was the thing that defendant promised to pay plaintiff to bring about.

The rule announced in the case from which we have quoted has been followed by our courts many times as disclosed by the following decisions: Schwabe v. Kemp & Coldwell, Tex.Civ.App., 20 S.W.2d 273, writ refused; Dickinson v. Sanders, Tex.Civ. App., 39 S.W.2d 102, 104, where it was said: "If the appellant actually employed appellee to bring about an exchange of her property and agreed to pay him a commission and he was the procuring cause of such trade, as was found by the jury, then it was immaterial whether she knew that he was the procuring cause of such trade at the time she signed the contract." Keener v. Cleveland, Tex.Com.App., 250 S.W. 151, 152, held: "The rule is well established that, when a real estate broker is instrumental in bringing together the seller and a purchaser who is acceptable to him, and they consummate a sale and purchase of property on terms that are satisfactory to the seller, this constitutes the agent the procuring cause of the sale, and he is entitled to the commission agreed upon." In Edmonson v. Tinsley, Tex.Civ.App., 15 S.W.2d 118, it was held that to entitle the broker to commission it was not necessary for the broker to keep up negotiations until the trade is finally closed. See, also, Trinity Gravel Co. v. Cranke, Tex.Com.App., 282 S. W. 798; Barnes v. Beakley, Tex.Civ.App., 224 S.W. 531; Garner v. Davis, Tex.Civ. App., 225 S.W. 567.

Upon the facts proven, the court found against defendant, upon its theory that, as a prerequisite to the enforcement of the contract for commissions, a deposit should be made in a local bank to guarantee the payment of defendant for its labors, and found in favor of plaintiff upon his theory that he was the procuring cause of defendant entering into a contract acceptable to it with the Oklahoma concern for the manufacture of the units, and that plaintiff had met the conditions of the contract, in securing the business for defendant.

In trials before the court without a jury, the court determines the credibility of the witnesses and the weight to be given their testimony, and, if there is testimony of probative force to support the conclusions reached, the trial court's findings are binding upon us. 3 Tex.Jur. p. 1102, § 771, and the many authorities there cited.

As stated above, the assignments of error raise the question of the sufficiency of the testimony to support the judgment rendered, but we have concluded that there was ample testimony, if believed by the court, to support the findings upon which the judgment was entered. All assignments are therefore overruled, and the judgment of the trial court is affirmed.