W. A. GAGE et al., Appellants, v. A. P. TRAWICK,
Defendant; J. W. MEARS, Interpleader, Respondent.

**St. Louis Court of Appeals, April 29, 1902.**

1. **Witness: TESTIMONY: PRACTICE, TRIAL: PRACTICE, AP-
PELLATE.** Where a party does not show what he expects to prove
by a witness, it is impossible for the appellate court to determine
whether the exclusion of the testimony of the witness was prejudi-
cial error or not.

2. **Fraud: EVIDENCE OF FRAUDULENT INTENT: DECLARA-
TIONS OF DEFENDANT.** Where the issue in a case was whether
or not defendant made the sale of his goods for the purpose of hin-
dering, delaying or defrauding his creditors, any declaration made
by defendant in trying to negotiate a sale immediately before or
about the time of sale, was competent evidence to prove his fraudu-
lent intention.

3. **Verdict: WHEN SET ASIDE: PRACTICE, TRIAL: PASSION
AND PREJUDICE.** In the case at bar, the verdict is so manifestly
the result of passion and prejudice that the trial court should have
set it aside on motion for a new trial.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,*
Judge.

REVERSED AND REMANDED.

*Wilson Cramer* for appellants.

(1) Declarations made by a vendor of goods before
the transfer, which is attacked as fraudulent, are competent
as bearing upon the question of his intent in making the
transfer. It was therefore error to exclude the evidence sought
to be elicited from witness Nunn relative to statements made

by Trawick. (2) Instruction No. 1 asked by the interpleader was improperly given, because the court failed to explain to the jury what is meant in law by the term "good faith" used therein. Dry Goods Co. v. Schooley, 66 Mo. App. 406. (3) Instruction No. 3 given for the interpleader should have been refused, because it is misleading and ignores the element of a fraudulent intent on the part ʼof the seller. (4) The several facts enumerated in the second paragraph of defendant's instruction No. 2 are shown by the evidence offered by the interpleader, and are undisputed, and should have been submitted to the jury by instructions as badges of fraud, from which the legal inference of a fraudulent purpose on the part of the vendor and of knowledge or notice thereof by the vendee might be drawn. Bump on Fraudulent Conv. (2 Ed.), p. 34; Dry Goods Co. v. Schooley, 66 Mo. App. 406. (5) The verdict is not supported by the evidence. Trawick's fraudulent purpose and Mear's participation therein are established by the evidence introduced by the interpleader, and the court would have been justified in sustaining a demurrer at the conclusion of interpleader's evidence. Alberger v. White, 117 Mo. 347.

*Jno. A. Hope* for respondent.

(1) When the admission of evidence could not vary the result its rejection is non-prejudicial. Colburn v. Brunswick, etc., 49 Mo. App. 415. The questions asked this witness were not in proper form and were leading. He was not an unfriendly nor an unwilling witness. The court exercised its discretion wisely; the ruling is not subject to review. Railroad v. Silver, 11 Mo. 209; Reber v. Tower, 11 Mo. App. 209. (2) It was not necessary to define the term "good faith." Heim Brew. Co. v. Linch, 51 Mo. App. 478. If the plaintiffs in attachment "desired an explanation of the term they should have asked it by request for further

instruction." Warder v. Henry, 117 Mo. 545. (3) There was no error in refusing that part of instruction for plaintiffs in attachment, of which they complain. It was an unwarranted comment on the evidence and singled out and gave undue prominence to certain particular things. Bank v. Nichols, 43 Mo. App. 379; Steinwender v. Creath, 44 Mo. App. 361; Dowd v. Reid, 53 Mo. App. 562.

BLAND, P. J.—One A. P. Trawick, in December, 1897, owned and conducted a mercantile business at Hayti, Pemiscot county, and had on hand a general stock of merchandise of the estimated value of two thousand dollars. On November fourteenth and twenty-fourth of the same year he conveyed all the real estate he owned, consisting of four town lots in the town of Hayti, to E. R. Trawick, his father. On December first he traded his stock of goods to J. W. Mears for five hundred acres of swamp land and had the deed made to his wife, Effie Trawick. This land he and his wife, on the twelfth day of March, 1898, conveyed to W. D. Lasswell and W. E. Hopper for the express consideration of two hundred and fifty dollars. Trawick was largely indebted and insolvent at the time he made the trade with Mears. W. A. Gage and others brought an attachment suit against Trawick and had the goods, which he had transferred to Mears, seized and levied upon under the attachment writ. Mears interpleaded and on the trial of his interplea the jury found the issues for him.

The evidence is that in the afternoon of December first, one Macke, an attorney at law, approached Trawick and said to him that Mears would give the five hundred acres of land for his stock of goods. Trawick afterwards went to Mears's house, called him out and told him that he would let him have the goods for the land. About nine or ten o'clock at night they met at Trawick's store and the trade was made. A notary was sent for and he made out the deed conveying

the land to Trawick's wife, at the direction of Trawick. The notary then proceeded with Mears to Mears's residence, called up Mrs. Mears, who had retired, and the acknowledgment of Mears and wife to the deed was taken and certified. This took place after twelve o'clock at night. Mears returned to the store, delivered the deed to Trawick, and Trawick turned over the goods to Mears and delivered the keys of the store to him. No invoice of the goods was taken. Mears testified that he had walked through the store on the day the trade was made and had estimated the goods to be worth two thousand dollars. Mears was conducting a store in the name of his wife in the same town near the Trawick store. On the morning after the trade was made, and very early in the morning, the goods were moved from Trawick's store by Mears to Mrs. Mears's store and mixed with her goods.

Trawick had never seen the land. It is only valuable for its timber. Mears had purchased the whole section, in which the five hundred acres is situated, at a tax sale for fifty dollars and afterwards conveyed the same to his wife. The estimated value of the land was from one to three thousand dollars.

Trawick had endeavored to sell his goods to several other persons including Dan Nunn, a saloon-keeper in the same town. Nunn testified that Trawick came to his place of business between eleven and twelve o'clock at night on December first and tried to sell him the stock of goods.

This witness was asked by appellant's counsel what Trawick said about his reason for wanting to sell out and what he said, if anything, about his indebtedness, or whether or not he was indebted. Objections were made to these questions which were by the court sustained, to which ruling counsel excepted at the time.

What the witness Nunn's answer would have been to the questions which the court excluded, is left to conjecture as counsel did not see fit to show what he expected to prove by

the witness. It is, therefore, impossible for this court to determine whether the exclusion of the testimony was prejudicial error or not.

One of the issues in the case was whether or not Trawick made the sale of his goods for the purpose of hindering, delaying or defrauding his creditors, and any declaration made by him tending to prove this issue as to his intentions in trying to negotiate a sale immediately before or about the time of the sale to Mears, would be competent evidence to prove his fraudulent intention.

The verdict in this case is so manifestly the result of passion and prejudice that the court should have set it aside on the motion for new trial. That Trawick's purpose in disposing of his goods was fraudulent, does not admit of doubt; that Mears participated in that purpose is scarcely open to debate. Every step taken by him to get possession of the goods is a badge of fraud, and there is not a scintilla of evidence found in the record to indicate an honest purpose on the part of either Trawick or Mears. On the contrary, it all points in one direction and establishes to the reasonable satisfaction of any unprejudiced mind that the transfer of the goods by Trawick to Mears was for the purpose of defrauding Trawick's creditors and that Mears participated in that fraud.

The judgment is reversed and the cause remanded. *Barclay* and *Goode, JJ.*, concur.