## JAMES T. GARDNER, Respondent, WILLIAM T. ELDRIDGE, Appellant.

### Springfield Court of Appeals, July 7, 1910.

1. **EVIDENCE:   Objection   to   Question:   Offer   of   Evidence.** Where a party asks a question of a witness, and an objection to the question is sustained, it is then incumbent on the party offering the evidence to inform the court what he expects to prove by the witness, and until he does this, he cannot complain that the witness was not permitted to answer the question.

2. ———: **Principal and Agent: Action for Commission: Assisting in Sale: Procuring Cause of Sale.** Where an agent sues his principal for commission for assisting in the sale of property, it is proper to reject testimony tending to show that plaintiff was not the procuring cause of the sale, for plaintiff's right to recover depends only upon the fact as to whether he assisted in making the sale and whether his services were of any value.

3. ———: ———: ———: ———. In a suit by an agent for commission for assisting in the sale of railroad property, it is proper to reject as immaterial, evidence tending to show that the plaintiff did not report to one of the officers of the railroad prior to the consummation of the sale, in the absence of evidence tending to show that the plaintiff had been instructed and was required to report to said officer.

Gardner v. Eldridge.

4. ———: ———: ———: **Measure of Damages.** In an action by an agent for commission in assisting in the sale of property, the amount recoverable was held to be the reasonable value of the services rendered, and this notwithstanding the defendant had agreed to be "more than liberal" in compensating plaintiff for his services, and in propounding a hypothetical question to a witness as to the value of said services, it is held improper to have included in said question the statement of the defendant that he would be "more than liberal" in compensating plaintiff.

5. ———: ———: ———: **Assisting in Sale: Hypothetical Question: Harmless Error.** In an action by an agent for commission for assisting in the sale of railroad property, it is held improper to permit a witness to testify what would be a reasonable compensation for assisting in the sale of said property, without stating to the witness everything that the plaintiff had done towards assisting in said sale. *Held, further,* that as it appeared from the verdict of the jury this testimony was not given any weight, the error in admitting the same was harmless.

6. ———: ———: ———: ———: **Harmless Error.** In a suit by an agent for commission for assisting in a sale of railroad property, it is held proper to permit a witness to testify how much the stockholders were to realize out of the sale, as bearing upon the value of plaintiff's services to the stockholders, but as it appeared the jury placed the same value upon plaintiff's services that defendant had agreed to pay, the error in rejecting this testimony was held harmless.

7. ———: **Impeaching Witness: Value of Impeaching Statement as Evidence: Harmless Error.** A prior statement of a witness was read in evidence on a cross examination, tending to contradict and impeach said witness. The statement also tended to establish plaintiff's case. The court informed the jury that the statement itself was not evidence of the matters therein contained. *Held,* that it was not error to admit the statement in the way it was admitted, and if the defendant had desired that the force of said statement as evidence be further restricted, it should have asked an instruction to that effect, and that the reading of the statement to the jury was not reversible error.

8. **PRINCIPAL AND AGENT: Action for Commission: Assisting in Sale: Procuring Cause of Sale: Instructions.** Where an agent sues his principal for a commission for assisting in the sale of property, an instruction is not objectionable on the grounds that it permits a recovery in case the jury finds that defendant

had employed plaintiff to assist in the sale, neither is it objectionable on the ground that plaintiff cannot recover for being the procuring cause of the sale, when he sues only for assisting in the sale. The fact that he did more than he had been employed to do would not relieve the defendant from liability to pay for his services.

9. ———: ———: ———: ———. In a suit by an agent for a commission for services rendered in assisting in the sale of property, it is proper to refuse an instruction denying the plaintiff a recovery unless he had been the procuring cause of the sale.

Appeal from City of St. Louis Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Henry S. Caulfield* and *Franklin Miller* for appellant.

(1) The broker must be the procuring cause of the contract on which he depends for his recovery. It will not suffice for his act to be one of a chain of causes producing the contract; for it must be the procuring cause or, as it has been said, it must be the *causa causans.* Ramsey v. West, 31 Mo. App. 676; Mead v. Arnold, 131 Mo. App. 222; Newton v. Richie, 75 Iowa 91; 23 Am. and Eng. Ency. Law (2 Ed.), 911. (2) The court erred in admitting and permitting to be read to the jury over the objections and exceptions of defendant, the typewritten statement, dictated by witness Brown, and, in particular, that part relating to the alleged statement of witness Lane to Brown concerning the value of plaintiff's assistance in making the sale. Kitchen v. Railroad, 59 Mo. 518; Hutchins v. Railroad, 97 Mo. App. 552; Fanny v. State, 6 Mo. 122; Callan v. McDaniel, 72 Ala. 105; 1 Wharton Law of Evidence, sec. 558; 1 Greenleaf's Evidence (12 Ed.), 511; State v. Taylor, 134 Mo. 154; Scharff v. Grossman, 59 Mo. App. 203; Harper v. Railroad, 47 Mo. 581; McFadin v. Catron, 120 Mo. 263; Sweeney v. Railway, 150 Mo. 400;

1 Greenleaf on Evidence (12 Ed.), sec. 449. (3) For plaintiff to recover for negotiating the sale he must show an employment to negotiate the sale. McCormack v. Herboth, 115 Mo. App. 193; Northrup v. Diggs, 128 Mo. App. 217; Bassford v. West, 124 Mo. App. 248. (4) There is a decided distinction in legal effect between a general employment to negotiate a sale and an employment to assist in that respect. Campbell v. Vanstone, 73 Mo. App. 84; Hawkins v. Chandler, 8 Houst. (Del.) 434; Lyon v. Valentine, 33 Barb. (N. Y.) 271; Longstreth v. Long, 6 Phila. 179. (5) But if one were employed merely to assist another in the negotiations, merely to play a subordinate part, then the commission idea is absent, and the actual work done and the time employed must be considered by the jury. Hawkins v. Chandler, 8 Houst. (Del.) 434. (6) All the cases in Missouri which recognize the right of an agent to recover by reason of having introduced or disclosed the name of the person who purchased are based upon the fact that in each such case the sale was due to such introduction or disclosure and would, probably not otherwise have occurred. Tyler v. Parr, 52 Mo. 249; Smith v. Truitt, 107 Mo. App. 1; Merton v. J. I. Case Co., 99 Mo. App. 630. (7) There is a decided distinction between a general employment to negotiate a sale and an employment to assist in that respect. Bassford v. West, 124 Mo. App. 257; Lyon v. Valentine, 33 Barb. (N. Y.) 271.

*Bishop & Cobbs* and *Harry G. Colson* for respondent.

(1) Instruction No. 1 was clearly justified by the facts in every particular. There was evidence before the jury on every hypothesis contained in it. Besides, all the instructions must be taken together and if, when taken together, they submit the issues fairly to the jury, no reversible error has been committed. Owen v. Rail-

road, 95 Mo. 181; Anderson v. Railroad, 161 Mo. 427; King v. King, 155 Mo. 425. (2) None of the errors complained of could have changed the result. This court will not reverse a judgment unless the errors complained of are really errors, materially affecting the merits of the action. Revised Statutes 1899, sec. 865. Whether those errors are in the admission of evidence. Gardner v. Railroad, 135 Mo. 100; or in giving instructions to the jury. Greer v. Bank, 128 Mo. 575; Barkley v. Cemetery Assn., 153 Mo. 317.

COX, J.—Action for compensation for assisting in the sale of certain railroad stock. The petition alleged that on July 25, 1903, defendant employed plaintiff to assist in the sale of the capital stock of what was known as the Cane Belt Railroad in Texas, and had stated to him that if he would assist him and the sale should be made that he would be more than liberal and generous in paying and compensating plaintiff for his services in that behalf; that plaintiff in pursuance of this employment undertook, to and, did, procure a purchaser and that as a result of his efforts a sale of the stock was made to the Santa Fe Railroad for the sum of eight hundred and fifty thousand dollars, and that his services in that respect were worth fifty thousand dollars, for which he asks judgment. The answer was a general denial.

There was a trial by jury, verdict for plaintiff for seven thousand five hundred dollars, and defendant has appealed. The errors insisted upon in this court relate to the action of the court in admitting and rejecting testimony, and in giving and refusing instructions.

It appears from the evidence that the Cane Belt Railroad Company was a Texas corporation with a capital stock of one hundred thousand dollars and had built and owned a railroad one hundred miles long between Sealy and Matagorda in Texas, with small branches. That in the building of this road the Lincoln

Trust Company of Saint Louis had advanced large sums of money and seventy-five per cent of the stock of the road had been pledged to the Lincoln Trust Company as collateral security for this debt. There was also a bonded indebtedness of seven hundred and fifty thousand dollars on the road. The twenty-five percent of the stock not pledged to the Lincoln Trust Company was owned by defendant, Jonathan Lane and one Beedecker in equal parts. Lane was president and general counsel and defendant Eldridge was vice-president and general manager of the Cane Belt road. The Gulf, Colorado and Santa Fe Railroad which was the Texas portion of the Santa Fe System, ran near the Sealy terminus of the Cane Belt road. Colonel Lucius J. Polk was vice-president of the Gulf, Colorado and Santa Fe; E. W. Ripley was the president of the Santa Fe, and Paul Morton was the second vice-president of the Santa Fe. Plaintiff had an office in Chicago and was in the general railway equipment business. Defendant Eldridge had purchased cars from him for use upon the Cane Belt road and plaintiff and defendant were close friends. Plaintiff's testimony tended to show that defendant came to his office in Chicago about July 25, 1903, and stated to him that the Lincoln Trust Company was threatening to sell the stock of the Cane Belt road held by them, and that there was urgent necessity for making disposition of the stock of the Cane Belt road in order to prevent loss to the defendant, and wished to engage plaintiff to assist in finding a purchaser for this stock and promised that he would be more than liberal in compensating him for his services in case a sale was made; that in pursuance of this agreement he undertook to assist defendant in the sale of this stock; that he then and there called in Tom Brown who was chief clerk to Paul Morton, vice-president of the Santa Fe, introduced him to defendant and it was there arranged that Brown should try to secure a meeting between defendant and Lane on the one hand, and Ripley and Morton on the

other with a view of trying to sell this stock of the Cane Belt road to the Santa Fe; that defendant stated that the property had been previously offered to the Santa Fe and they had refused to purchase. That through Brown the meeting was finally arranged and that a sale was consummated on the 7th of November, 1903, for the sum of eight hundred and fifty thousand dollars. That afterward plaintiff had demanded pay for his services and had been refused, but that defendant had, at different times, promised to settle and to pay plaintiff but that no amount had ever been agreed upon between them, but that on January 30, 1904, defendant had written plaintiff a letter in which he offered to pay seven thousand five hundred dollars. Plaintiff had testified that the value of his services was fifty thousand dollars and Theodore P. Shonts had testified on plaintiff's behalf that a reasonable compensation would be five per cent of the price for which the stock sold. This, together with the letter of defendant, was all the evidence on the part of plaintiff relating to the value of plaintiff's services.

Defendant denied any contract of employment between himself and plaintiff, and also denied having made several statements which plaintiff had testified that he had made, and further testified that he understood that what plaintiff did was done as a matter of friendship and without expectation of compensation, but that plaintiff had said to him that Brown was a friend of his and if he could he would be pleased if defendant would pay him something that he might make a present of it to Brown. Defendant also testified that at one time plaintiff and Brown had met him in Texas, and that plaintiff had then insisted that defendant settle the question of compensation with Brown and then said that he himself expected nothing. That defendant then in conversation with Brown had offered him seven thousand five hundred dollars. The further testimony on behalf of defendant tended to show that the sale of

the stock was not brought about through the efforts of plaintiff.

The errors complained of in relation to the admission of testimony will be noticed first. Defendant placed upon the witness stand one Mr. Moody who was asked to state what part he had taken in the sale of the Cane Belt Railroad to the Santa Fe. Upon objection of plaintiff he was not permitted to answer. This is assigned as error. The defendant did not state to the court what he expected to prove by this witness and, hence, the court was not informed whether or not the testimony, if given, would be material and defendant having failed to inform the court what he expected to prove by this witness cannot now complain that he was not permitted to answer the question asked him. [Ruschenberg v. Southern Electric Railroad Company, 161 Mo. 70, 81, 61 S. W. 626; McCormick v. City of St. Louis, 166 Mo. 315, 338, 65 S. W. 1038; Gage v. Trawick, 94 Mo. App. 307, 68 S. W. 85.]

It is next contended that error was committed in excluding correspondence between Colonel Polk, vice-president of the Gulf, Colorado and Santa Fe, and Mr. Ripley, president of the Santa Fe. The purpose of offering this testimony as contended by defendant was to show that plaintiff was not the procuring cause of the sale being made and insists that unless plaintiff can show that he was the procuring cause of the sale being made that he cannot recover. This proposition is correct where the ordinary broker is employed to sell property and his compensation is conditional upon his making a sale. [Mead v. Arnold, 131 Mo. App. 214, 222, 110 S. W. 656; but this case does not stand upon that proposition.] The contract under which plaintiff seeks to recover in this case is not the ordinary broker's contract in which the agent is required to procure a sale of the property before he is entitled to compensation, but his petition, and his proof under it, tend to show that plaintiff's employment in this case was merely to assist defendant in

making a sale, and, hence, his right to recover depends upon the fact as to whether he did assist the defendant and whether his services were of any value. This being true it is immaterial what transpired between Colonel Polk and Mr. Ripley.

The negotiations for the sale of the stock of the Cane Belt road were conducted in person by Jonathan Lane who was president of the Cane Belt road and when Lane was upon the witness stand he was asked by defendant whether or not the correspondence between plaintiff and defendant Eldridge had ever been communicated to him prior to the consummation of the sale. On objection this testimony was excluded. No error was committed in this respect. Plaintiff's duty, under his alleged employment, was to help to find a purchaser for the property. Lane was a part owner and was representing both himself and the defendant, in his efforts to sell the property, and there is no evidence that defendant, at any time, ever instructed the plaintiff to report to Lane, and in the absence of such instruction he was not required to do so, and this testimony was for that reason, immaterial.

Theodore P. Shonts was placed upon the witness stand by plaintiff and was asked this question. "Q. What, in your opinion, is a fair and reasonable price or compensation for assisting in the sale of railroads?" This question was objected to and, in this instance, we think the objection ought to have been sustained. It is clear that a party employed to assist in the sale of a railroad could only recover compensation for what he did, and manifestly no witness could testify what would be a fair and reasonable compensation without knowing what he had done. The same witness was also asked a hypothetical question which undertook to recite everything that plaintiff had done and also had incorporated in it the conversation plaintiff had testified to as having passed between him and defendant at the time he was employed. This question was objected to, and we

think that objection was well taken, and ought to have been sustained. There was no objection to the qualification of the witness to testify as an expert as to either of these questions, but this hypothetical question which was supposed to cover the services rendered by plaintiff ought not to have included in it the conversation between plaintiff and defendant showing the nature of his employment. This question recited the conversation in which it is claimed defendant had stated that if plaintiff would assist him and the sale should be made that he would be more than liberal in compensating him for his services. This should have been omitted from this question. Plaintiff's right of recovery was limited to the reasonable value of the services rendered, and the fact, if it were a fact, that defendant had at the time of the employment manifested a disposition to be more than generous in compensating plaintiff for his services, could, in no way, increase the value of the services, and, hence, had no place in this question, and if the testimony in this case was such as to indicate that the jury may have been influenced in any particular by this testimony this would constitute reversible error, but in answer to this question the witness stated that a reasonable compensation would be five per cent of the amount the stock sold for, and if the jury had been guided by the testimony of this witness they should have allowed plaintiff forty-two thousand five hundred dollars. The testimony of plaintiff that his services were worth fifty thousand dollars, this testimony of Mr. Shonts, and the letter of defendant to plaintiff in which he had offered to pay plaintiff seven thousand five hundred dollars, and the testimony of defendant that he had offered to pay Brown seven thousand five-hundred dollars was all the testimony on the question of the value of plaintiff's services. The jury returned a verdict for plaintiff for seven thousand five hundred dollars, the exact amount which defendant had twice offered to pay and it is apparent that the jury based

the amount of their verdict upon the testimony of defendant alone and disregarded both the testimony of plaintiff and Shonts in fixing the amount, and, since defendant had, by letter, offered to pay plaintiff this amount and had himself, in person, offered to pay Brown the same amount, and the jury having awarded only that amount, the error committed by the court in admitting the testimony of Mr. Shonts was harmless in this case.

Defendant placed Mr. Lane upon the witness stand and tried to show by him what was done with the eight hundred and fifty thousand dollars which the Santa Fe had agreed to pay for the Cane Belt Railroad. The court permitted him to do this in so far as he was able to state the items and the amounts paid for each, but the witness was unable to account for the expenditure of the entire amount in that way. The contract of sale had provided that the price was to be eight hundred and fifty thousand dollars, but that out of that sum was to be paid the floating debt of the Cane Belt road, and certain extensions and improvements that it was agreed were to be made were also to be paid out of it, and the balance to be paid over to the stockholders. The defendant was seeking, by this testimony, to show the amount that the stockholders realized out of the purchase price of the road. This testimony was only admissible for one purpose and that was to show how much the stockholders were to realize out of the sale, and the bearing it would have upon the value of plaintiff's services, but as we have already said the jury evidently based their verdict, so far as the amount of it was concerned, upon the testimony of what defendant had himself agreed to pay, and while we think the witness should have been permitted to answer this question, the refusal of the court to permit him to do so was harmless error in this case.

Defendant placed Tom Brown on the stand and he testified in defendant's behalf to the effect that he heard

the plaintiff say that he did not expect any compensation; that what he did in trying to assist defendant in making the sale was done as a matter of friendship, and that he so understood plaintiff's action all the way through; further that he himself did not expect compensation; he had thought before the suit was brought that something might be paid to him, but understood that if it were paid it would be a mere gratuity, and that he would have advised against the suit being brought had he known that it was to have been brought. On cross-examination he identified a statement which he had made after the suit was brought. This statement had been dictated to a stenographer of plaintiff's attorney, and this statement was read in the hearing of the jury during the progress of the cross-examination of this witness. In this statement Brown had said that he had gone in company with the plaintiff to Texas to try and arrange a settlement of the amount due the plaintiff, and that when there, in a conversation with Lane, Lane had made statements to the effect that the sale could not have been consummated but for the assistance rendered by the plaintiff, and that plaintiff was entitled to liberal compensation for his services. The defendant objected to this portion of the statement being read and asked the court to state to the jury that the statement was not evidence of any facts recited therein. This the court did and informed the jury that this statement was not evidence at all, but that plaintiff's counsel were only permitted to read it for the purpose of cross-examining the witness Brown.

The evident purpose of offering this statement was to impeach Brown in so far as it did impeach him, and to show that he had changed front in his attitude toward the plaintiff since the bringing of this suit. The court in his statement to the jury and in overruling the objections of defendant who was seeking to exclude the statement entirely, clearly defined to the jury the purpose of offering this testimony and we do not think it

was error to admit it in the way it was admitted. If defendant had any fear that the jury might consider it as testimony of the fact that plaintiff was entitled to compensation and wanted the oral restriction placed upon it by the court made any more effective than it was he should have asked an instruction of that kind and had he done so the court, no doubt, would have given it, and we think, under the circumstances, the reading of this statement in the presence of the jury was not reversible error.

It is insisted in this court that error was committed in giving instruction number one for plaintiff. This instruction told the jury that if they believed from the evidence that defendant had employed plaintiff to assist him in the sale of the stock of the Cane Belt Railroad, and that plaintiff, through his efforts, had procured a purchaser for the stock, then they should find for plaintiff. The objection to this instruction is that it allows plaintiff to recover on proof that he assisted defendant without showing that he was the procuring cause of the sale being made. As we have already said, plaintiff's cause of action rested upon the proposition that he had been employed to assist and that he did assist, and, hence, this instruction followed the pleadings and the evidence and was not open to the objection made against it. Objection is also made to this instruction that if plaintiff relies upon the fact that he assisted defendant in the sale of the stock that he cannot recover upon proof of the fact that he himself procured the sale. We are not impressed with this argument. If it be true that plaintiff was employed only to assist in the sale and in his proof he did show that he not only assisted, but did more and actually made the sale, it certainly would not relieve defendant from his liability to pay plaintiff for his services, and he cannot now be heard to say that plaintiff had done more than he hired him to do.

Defendant now insists that the court erred in refus-

ing instruction number twelve asked by the defendant. This instruction required the jury to find that plaintiff had been the procuring cause of the sale before he was entitled to recover. The court was clearly right in refusing this instruction because plaintiff's cause of action was not based upon the fact that he had procured the sale, and, for that reason alone, this instruction was foreign to the issues involved in this action, and it was properly refused. We find no reversible error in the trial of this case, and the judgment will be affirmed. All concur.