S. E. KURTZ, v. PAYNE INVESTMENT Co., Appellant.

**Brokers:** COMMISSIONS: PROCURING CAUSE. A broker may be instru-
mental in effecting a sale of real estate and still not be the pro-
curing cause so as to entitle him to a commission for finding
a purchaser.

**Same:** ACCEPTANCE OF PURCHASER. Ordinarily the production of a
person willing to make an exchange of properties is not the
performance of a contract to find a purchaser; but where the
owner has reserved the right to fix the terms of sale, and accepts
other property in part payment, he can not object to the broker's
commission on the ground that the purchaser did not pay all
cash.

**Same:** COMMISSION CONTRACT: VARIANCE BY PAROL. Where the writ-
ten terms of an agency made no provision for the payment of
commissions in case of an exchange of properties, but had rela-
tion only to cases where sales were made, an oral agreement
for compensation in case of an exchange was not in conflict
with the writing and therefore provable.

**Same:** MODIFICATION OF CONTRACT BY PAROL. The parties to a writ-
ten contract may subsequently modify it by an oral agreement,
or entirely supersede it by one in parol.

**Same:** CONTRACT: CONSTRUCTION: WHEN PERFORMED. A broker's
contract providing that commissions should be due and payable
on settlement of all sales is construed to mean upon full pay-
ment of that part of the price to be paid in cash, whether at
the time of signing the contract of sale, or only part then and
the balance at consummation of the contract; and commissions
not thus matured at the time judgment was entered on the con-
tract were subject to a plea in abatement.

**Same:** PROCURING A PURCHASER: EVIDENCE. The provision in a brok-
er's contract that no commission should be allowed him unless
he brought a customer and a sale was closed at that time, did
not require the sale to be made at the time the broker was
first appointed, but was a limitation of the period in which nego-
tiations then begun should be concluded. Evidence held to re-
quire submission of the questions of whether the broker pre-

sented a prospective purchaser and the negotiations then begun resulted in a sale.

**Same:** RATIFICATION OF AGENT'S ACTS. Confirmation of a sale made by a broker at a price fixed by the owner's agent is a ratification of the agent's representations as to commissions to be paid the broker.

**Same:** EVIDENCE: *Res gestae.* The statements of an agent of the owner in the sale of land as to the payment of commissions, not a part of the broker's negotiation of the sale, are not admissible as *res gestae* in an action for the commission.

**Same:** AGENCY: SCOPE OF AUTHORITY. From authority to appoint agents may be inferred authority to fix the terms of the appointment, including the matter of compensation.

**Same:** EVIDENCE OF COMPROMISE: WAIVER. The admission in evidence of an offer to compromise and settle a suit is reversible error, and is not waived by the cross-examination of the witness.

**Same:** RECOVERY: QUANTUM MERUIT. Where the claims of a broker to commissions are based upon express contract fixing his commission, instructions authorizing recovery on *quantum meruit* are erroneous.

*Appeal from Sac District Court.*—HON. Z. A. CHURCH, JUDGE.

TUESDAY, MAY 7, 1912.

ACTION for commissions alleged to have been earned in finding purchaser of land. From judgment as prayed, the defendant appeals.—*Reversed.*

*R. L. McCord,* and *Wm. Baird & Sons,* for appellant.

*W. A. Helsell,* for appellee.

LADD, J.—The defendant is a corporation with its principal place of business in Omaha, Neb. It maintained an office at Odebolt, in this state, from November, 1909, until May, 1910, with F. A. Stroup, its vice president,

in charge, for the purpose of disposing of what were known as the Brookmont farms belonging to A. E. Cook. It employed the plaintiff to bring prospective purchasers for the purpose of enabling it to sell to them tracts constituting said farms. The plaintiff alleged that he so presented Hoefft & Son to whom defendant sold 160 acres, John Wagner to whom it sold 375 acres, and John Coon to whom it sold 395 acres, and that he was to be paid for services so rendered $2 per acre. In the second count plaintiff alleged that defendant employed him to negotiate an exchange of some of said land with John Huldeen, for which services it agreed to pay him $2 per acre for the number of acres disposed of in excess of the number received. In the third count claim to a commission of $2 per acre was made for finding a purchaser for eighty acres received by defendant in an exchange with John Wagner, and that he found a purchaser in the person of Adam Weitzel, to whom the land was sold. In the fourth count reasonable compensation for the services mentioned was demanded.

The defendant admitted having employed plaintiff, and that it agreed to pay $2 per acre for all lands sold after December 2, 1909, "to parties who were actually brought to the defendant by the plaintiff, . . . where the plaintiff should himself or jointly with the defendant procure said purchaser to sign a contract for the purchase of the land sold by the defendant to such purchaser at the price and on the terms for which said land was listed with the plaintiff for sale at the same time that such purchaser was brought to the defendant by the plaintiff," said commission to be paid "on the settlement of the sales made to 'purchasers.'" The defendant admitted the services rendered in the sale to Hoefft & Son, but averred there to have been 155.97 acres only, admitted services rendered in the sale to Wagner, but averred that this happened prior to December 2, 1909, and that plaintiff was to receive one percent of the purchase price of the acreage above that of

the land received from Wagner, and that this was 148.21 acres at $135 per acre and 142.7 acres at $125 per acre. It admitted that he was entitled to the commission claimed on the sale of 165.5 acres to John Coon, but no more, and alleged that settlements had not been made, and nothing would be due until January 1, 1911. It also pleaded that the commission claimed in the second count of the petition would not be due until the date last above stated. In response to count three of the petition, defendant alleged the commission was to be $1 per acre only, and was not to be payable until settlement fixed for January 1, 1911. It denied liability on a *quantum meruit,* pleaded settlement, and interposed a counterclaim, which was denied in the reply.

I. The farm sold to Hoefft & Son contained 155.97 acres, and plaintiff was entitled to a commission of $311.94. The farm contracted to John Coon March 17, 1910, con-

1. BROKERS: commissions: procuring cause.

tained 235.86 acres, but eighty acres of this previously had been sold to one Hamilton, who was induced to surrender his contract, and allow Coon to buy the land. The defendant was not interested in this change, save as it might aid in disposing of the 155.97 acres. Having been sold to Hamilton, it did not belong to Cook, and there was no showing that plaintiff participated in a sale to Hamilton, save that he was "instrumental" therein. One may be thus instrumental without having anything to do with finding a purchaser. The record was not such as to authorize the allowance of a commission on the sale of this eighty acres.

II. John G. Wagner entered into a contract for the purchase of 375.62 acres April 7, 1910. That this sale was through plaintiff's agency is not questioned, but it is contended that, owing to previous negotiations, plaintiff was entitled to one percent of the price, instead of $2 per acre. Wagner had contracted with Cook for the same land November 20, 1909, subject to defendant's approval, and, had such approval been given, the compensation of plaintiff would

have been one percent. But it declined to approve this contract, and the agreement of April 7, 1910, under which he purchased, was upon different terms. On December 2, 1910, the defendant, after consulting with its agents, delivered to plaintiff a letter in words following:

As there is some conflict of opinion as to what the commissions should be to agents on the sale of the 'Brookmont lands' arrangements have been made with you by Mr. Cook on a former deal as to what the commissions should be, and this same arrangement was attempted to be endorsed later when we took up the sale of the land, and as the rate then made and agreed upon is conflicting with the rate made to Eastern agents, and is not appearing to be satisfactory with local agents, we have determined to cancel the arrangement formerly made and make a flat rate of $2.00 per acre as commission to agents on the sale of the 'Brookmont Lands.' The commissions will be due and payable on the settlement of all sales; for instance—after a purchaser signs a proposition and puts up earnest money with the contract to settle the balance cash required on the first payment March 1, 1910, then the commissions will be due and payable on that settlement, but where a purchaser settles at once and pays the cash required that otherwise would be due March 1, 1910; and the contract is made jointly between Mr. Cook and the purchaser and signed up, in that event your commissions are due on that settlement. Now I hope this is entirely satisfactory to you and you have said it would be, and that you would push the work to the uttermost. I have adjusted this commission on a basis that I thought was right, and with the idea in view that it would promote business and encourage you to get out after the business, and I believe it will, and I hope you will not disappoint me. The above arrangement applies to business from now on; that is, on all propositions that are closed from this date. No commissions will be allowed to an agent unless he brings the customer and closing is had at that time.

The deal with Wagner was not closed until long thereafter, and by the express provisions of this letter it applies thereto, and plaintiff is entitled to commission on the basis

therein specified.   But Wagner exchanged eighty acres of
land, and it is insisted that plaintiff ought not to be allowed
commission on more than the difference, or 295.62 acres.
He is entitled to that much and whether to anything on the
eighty acres received was a matter to be submitted to the
jury.

.Of course, a sale is not to be confused with an exchange,
and ordinarily one who undertakes to find a purchaser has
not done so if he produce a person ready to trade.   If, how-
ever, such a person is produced and a prin-
cipal who has reserved the right to fix the
terms of sale sells his property and accepts
in part payment something other than money, he is not in
a situation to object to the agent's claim for commission of
an agreed price per acre on the ground that he did not
·present a customer paying all cash.

<small>2. SAME:
acceptance
of pur-
chaser.</small>

If, then, there was no agreement other than that con-
tained in the letter quoted, plaintiff. would be entitled to
$2 per acre on the entire tract.   But defendant contended
that it was understood orally that the agent's
commission should be computed on the dif-
ference in acreage between that ·contracted
and received in exchange.   Such an arrangement was not
in conflict with the terms of the letter, for the latter related
to sales and this to exchanges.

<small>3. SAME: commis-
sion contract:
variance by
parol.</small>

Moreover, subsequent to the writing of the letter, it was
competent for the parties to modify the terms specified in
the letter by oral agreement or even to supersede such
written contract by an oral one.   Evidence
of admissions by plaintiff tending to sustain
the claim that there was an understanding with
respect to exchanges is to be found in the record, but,
when defendant's manager Stroup was on the witness stand,
he was asked:   "Did you at the, time or subsequent to the
writing of this letter of December 2d have a conversation
with Mr. Kurtz as to what commission he would be allowed

<small>4. SAME: modifi-
cation of
contract by
parol.</small>

on the sale of the Brookmont lands when other lands were taken as part payment?" An objection as "immaterial, irrelevant, seeking to dispute the terms of a written contract" was sustained. The ruling as appears from what has been said was erroneous. Such additional agreement was sufficiently pleaded, and whether entered into prior to the final contract with Wagner should have been submitted to the jury. If it had been, then plaintiff was entitled to $2 per acre on 295.62 acres only; otherwise on the entire tract.

III. The defendant pleaded that the above commissions would not be due until January 1, 1911, as settlement, as contemplated in the letter of December 2d would not be effected with the several purchasers until then. It will be observed therefrom that if a part of the cash payment only made at the time the contract of purchase was signed, and the remainder to be paid when the deal was closed, the commission was not to be paid until the latter date; but, if the entire cash payment were made at the signing of said contract, the commission would be payable then.

5. SAME: contract: construction: when performed.

The term "earnest money" is used as synonomous with "first payment," not in a technical sense, and the letter clearly explains that by "settlement of all sales" was meant the full payment of the portion of the purchase price to be paid in money, whether this were at the time of signing the contract subsequently to be executed or in part at that time and the remainder when it should be consummated. Reverting to the several transactions, we find that Hoefft & Son paid $1,005.95 down, and were to pay $5,000 January 1, 1911, and then execute mortgages securing the same. Wagner paid $4,000 when the contract was signed, and was to pay $650.50 and execute mortgage security January 1, 1911. Plainly enough, the commissions for finding these purchasers had not matured when judgment was entered,

and the plea in abatement as to such commission should have been sustained.

IV. On the 20th day of April, 1910 John Coon made a second purchase—this time of 160 acres. But $500 was paid down, and $5,550 was to be paid January 1, 1911, and a mortgage executed to secure deferred payments, so that, even if a commission were owing plaintiff, it did not become due until the date last mentioned. Was he entitled thereto at any time? By the terms of the employment, no compensation was to be "allowed to an agent unless he brings the customer and closing is had at that time." This can not be construed as meaning the particular meeting at which he is presented, but was evidently intended to limit the period during which negotiations then begun continued. Coon and defendant's agents testified that no reference to the last tract purchased was made pending negotiations for the sale of the 240 acres first mentioned, and that these ended March 17, 1910, while plaintiff swore that Coon accompanied him and another agent in an automobile hired by plaintiff for the purpose of showing Coon's brother's land, and, upon the latter saying he did not like it, Coon said, "Well if he don't want it, I will give them a deal for it on my irrigation land," that, upon their return to Odebolt, defendant's manager arranged with Coon to wire, and told plaintiff he had done so to ascertain the value of the Idaho land, and that in about two weeks the deal was closed.

6. Same: procuring a purchaser: evidence.

The issue as to whether Coon was presented by plaintiff to defendant as a prospective purchaser of the tract last bought by him, whether negotiations for the purchase were then begun, and the sale effected in pursuance of negotiations so begun, were issues which should have been defined in the instructions to the jury.

V. The defendant agreed to pay plaintiff $2 per acre for the difference in acreage between lands contracted to and received from Huldeen, and this amounted to $236. The

defendant contended that this commission was not to be paid until January 1, 1911, and whether such was the understanding was for the jury to decide. Of course, the matter of maturity of plaintiff's claims will be of no farther importance, save possibly in the amendment of pleadings and taxation of costs.

VI. The plaintiff, with the aid of one Schmitz, negotiated the sale of the eighty acres received of Wagner to Weitzel. Defendant admitted it was to pay a commission

**7. SAME: ratification of agent's acts.**

of $1 per acre, but plaintiff denied there was such an agreement. Schmitz was asked: "Didn't Stewart tell you directly what you were to have?" Over objection as immaterial and incompetent, the witness answered: "Mr. Stewart said the commission would be $2 per acre." Counsel argue that the ruling was erroneous, in that the statement was not within the scope of Stewart's agency. The statement is claimed to have been made when they were in Weitzel's yard and shortly before the bargain.

Stewart fixed the price for which the land might be sold and sale at such price was subsequently confirmed by defendant. This undoubtedly ratified whatever representations Stewart made to Weitzel (*Eadie v. Ashbaugh*, 44 Iowa, 519; *Campbell v. Park*, 128 Iowa, 181) but affords no ground for inferring an approval of Stewart's statement to Schmitz, not necessarily involved in selling.

It is argued that Stewart's statement as it was made in contracting for the principal should be received in evidence as part of *res gestae*. *Haven v. Brown*, 7 Greenl. (Me.)

**8. SAME: evidence: res gestae.**

421 (22 Am. Dec. 208); *School v. School*, 122 Pac. 494 (15 Atl. 881, 9 Am. St. Rep. 124); *Farrar v. Peterson*, 52 Iowa, 420; *Eadie v. Ashbaugh*, 44 Iowa, 519. But it does not appear to have been any part of the negotiations with the purchaser, and therefore is not to be so regarded. Stewart testified that his duties were "generally to appoint agents and work

together with them in teresting buyers." The defendant confirmed what he did in the way of fixing prices, and from this and the circumstance that he had authority to appoint agents and work with them it might have been inferred that. he also was authorized to arrange with the agent the terms on which services should be rendered.

In other words, from the authority to appoint agents, there may be implied the authority to define the terms of such appointment, including the matter of compensation.

**9. SAME: agency: scope of authority.** As there was evidence that Stewart was without such authority, the issue was appropriate for the determination of a jury. If he was without authority, and there was no agreement that his commission should be $1 per acre, then plaintiff was entitled to recover on a *quantum meruit,* and this is the only item in the record for which compensation on this basis was permissible.

VII. This question was asked plaintiff: "As a matter of fact, when you were quarreling about the amount that was due, he (Stroup) finally offered you $1,200, is that right?" ·Over an objection as incompetent, **10. SAME: evidence of compromise: waiver.** irrelevant, and immaterial, he answered: "He offered me $1,200. This was his third offer. That was final, and is the most money he offered me. When I demanded settlement before suit, he only offered me $250. I demanded payment before we started suit." The ruling was erroneous and prejudicial, and cross-examining the witness did not waive the error. The law favors the adjustment of disputes outside of court, and will not permit either party to make use of mere offers of compromise in evidence as in the nature of admissions against the other. *Rudd v. Dewey,* 121 Iowa, 454.

Nor was the error in ruling otherwise waived by cross-examination on the subject. The evidence having been erroneously admitted, it was permissible to destroy its per-

nicious effect, if possible, by bringing out all the facts relating thereto.

VIII.   Instructions 11 and 12 permitted the jury to discard the claim of plaintiff to the compensation agreed upon and recover on a *quantum meruit*.   This was error,

11. SAME: recovery: *quantum meruit.*

for there was no dispute but that all the services rendered by plaintiff were in pursuance of an express agreement fixing his compensation save possibly in negotiating the sale to Weitzel *Tuffree v. Binford,* 130 Iowa, 532.—*Reversed.*