## CULP et al. v. BROWNE et al. (No. 9641.)

(Court of Civil Appeals of Texas. Fort Worth. May 21, 1921. On Motion for Rehearing June 25, 1921. Rehearing Denied Nov. 19, 1921.)

On Motion for Rehearing.

1. **Brokers** ⊜84(1)—Less burden where contract requires broker to be instrumental in sale.

Where contract requires broker to be "instrumental" in the sale, the broker suing for his commissions assumes a less burden than where contract calls for broker to be the procuring cause of the sale.

2. **Brokers** ⊜86(4)—Right to commissions requiring brokers to be instrumental in sale shown by evidence; "instrumental."

In action by brokers for commissions in the sale of garage business, under contract requiring that plaintiffs be "instrumental" in the sale, evidence *held* sufficient to support a judgment for plaintiffs; "instrumental" meaning serviceable, helpful.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Instrumental.]

3. **Partnership** ⊜205—Dismissal as to partner not served not error.

In action against a partnership for commissions in the sale of a garage business, where

one of the two partners has not been served with process, it was not error for the court to dismiss the action as to the partner not served, as the partners' liability was joint and several, and remaining partner, if liable, had his right to contribution.

Appeal from Wichita County Court; J. B. Hatchitt, Judge.

Action by George T. Browne and another against A. W. Culp and W. E. Reynolds, as partners. Judgment for plaintiffs, and defendant Culp appeals, the cause as to Reynolds having been dismissed. Affirmed on rehearing.

W. H. Sanford, of Wichita Falls, for appellant.

Arch Dawson, of Wichita Falls, for appellees.

BUCK, J. George T. Browne and Roy S. Jordan sued A. W. Culp and W. E. Reynolds, as partners, for a real estate commission for selling a garage business, known as the "Opera House Garage," in the town of Wichita Falls. Plaintiffs alleged that the defendants by contract listed their leasehold estate on said property, together with all fixtures, tools, and appliances of the garage business, with the plaintiffs upon the following terms: If plaintiffs sold or were instrumental in the sale of said property for $7,750, then defendants were to pay $750 as commission; if plaintiffs sold said property for less than $7,750, then plaintiffs were to receive 10 per cent. of the first $5,000, and 5 per cent. of any amount in excess of $5,000 for which the property was sold.

Said contract further provided an exclusive listing with plaintiffs of said property for a period of 14 days from the date on which the property was placed with plaintiffs for sale; and plaintiffs claim that they were the procuring cause of the sale made to R. Spradling, but such exclusive agency did not preclude the defendant from selling to a purchaser not procured by plaintiffs, and under such circumstances defendant would not be liable to plaintiffs. 2 Mech. on Agency, § 2445.

From a judgment for plaintiffs, in a trial before the court, for $600 against A. W. Culp, the defendant has appealed. The cause against W. E. Reynolds, the other defendant, not having been served, was dismissed.

Plaintiff George T. Browne testified that the firm of which he was a member made a contract with defendants April 23, 1920, for the exclusive listing of the property in question for 14 days, and that on April 25th plaintiffs began advertising the said property in the daily papers of Wichita Falls, and continued said advertising for about a week.

L. W. Harrington testified that he was an attorney, occupying the same offices with plaintiffs, and frequently assisting them in their business; that during the latter part of April, R. Spradling came to his office and inquired about the garage which plaintiffs were advertising in the paper; that witness, after waiting awhile for plaintiffs to come, finally gave to Spradling the name and location of the garage and told him that he could go down and look at it, and could see plaintiffs later; that Spradling, when given the name and location of the garage, did not claim to have previously seen the garage; that shortly after Spradling left the office plaintiff Jordan came in, and, on being informed by witness that Spradling had been to see about the garage, Jordan got a description of Spradling and left the office.

Roy S. Jordan testified that, on getting a description of Spradling from Harrington, witness went out of the office and overtook Spradling on the corner of the street near the garage, introduced himself, and took Spradling to the garage, showed him the property, explained to him the business, and the terms of the sale; that Spradling asked questions of the witness concerning the owners, the business, and the terms, but that no sale was made to Spradling at that time.

Ira Craig testified that he was employed by Culp & Reynolds as superintendent of the Opera House Garage from about February 14, 1920, until May 3, 1920; that during said time he was personally present at the garage practically all the time every day; that he first saw Spradling at the garage about the 1st of April; that he came to the shop alone, and inquired whether or not it was for sale, and that witness told him it was; that Spradling asked some questions about the business that was being conducted, and came in several times between the first visit and April 23d; that on the last-named date he asked Craig to arrange for him to meet Mr. Culp or Mr. Reynolds; that he told Mr. Culp that Spradling wanted to see him; that Mr. Culp was in the shop when Spradling came in a day or so later, and they talked about the sale of the place; that Spradling was alone at that time—that is, neither Browne nor Jordan came in with him; that he never saw Mr. Browne around the shop; that the only time Mr. Jordan visited the shop was when he came in with a little Jew who he said was a prospective purchaser.

A. W. Culp testified that he sold the place about May 5th to Spradling; that he first saw Spradling in the latter part of April, shortly after Craig had told him that Spradling wanted to see one of the firm; that on the first conversation with Spradling he asked him if he had talked with Browne or Jordan, and he told him that he had not; that neither of the plaintiffs took any part in the sale. That under the contract with plaintiffs it was understood that the defendants re-

tained the right to sell the property themselves, and that plaintiffs were to get a commission only in case they were instrumental in making the sale; that he had never had a telephone conversation with either of the plaintiffs after the deal with Spradling had been closed; that shortly after the sale had taken place Browne called him up over the telephone and claimed the commission on the deal, and that this was the only telephone conversation witness had had with Browne pertaining to the sale; that he was not notified by any one that plaintiffs claimed Spradling as a prospect of theirs until after the sale was made.

Spradling testified that he bought the garage from Culp and Reynolds; looked at it as early as April 1st, and visited it probably a dozen times during the month of April, looking it over, taking inventory of the equipment, etc.; that he talked with Craig, the superintendent, on the occasion ,of these visits, but never saw Mr. Culp until the latter part of April; that he never talked with either of the plaintiffs about the place; that he went to plaintiffs' office once, just before he saw Mr. Culp; that he read the advertisement of plaintiffs in the paper, but that it did not give the location of the garage they had for sale; that when Mr. Harrington told him that the garage they had was the Opera House Garage, he told Harrington that he knew all about that garage, and left; that he had no conversation with Browne or Jordan about buying the garage, and that neither one of them went to the garage with him; that he never saw either of them until after he had closed the deal for the garage; that when he found that the garage that the plaintiffs had for sale was the one that he had been considering already, he dropped the matter as far as plaintiffs were concerned; that plaintiffs' advertisement and his visit to their office had no influence whatever on the closing of the deal.

Harry Schack testified that he was one of the proprietors of the W. S. Auto Supply Company; that he told Spradling before the 1st of April about the Opera House Garage being for sale, and urged him to buy it.

Browne testified, in rebuttal, that on or about April 26th he called defendant Culp by telephone and informed him that Spradling was plaintiff's prospective buyer, and that at said time defendant Culp did not deny the same, nor did .he claim to plaintiff that he had had any negotiations with Spradling for the sale of the garage previous to the listing of the same with plaintiff; that on or about April 28th he called defendant Culp again by telephone, and, according to the usual practice of his office, gave to Culp a list of some four or five prospective buyers for defendant's garage which plaintiff had secured, and one of the names given was that of Spradling, and that Culp did not then claim to plaintiff that any negotiations with Spradling had been had prior to the listing of the garage with plaintiffs.

Culp denied Browne's testimony categorically.

The burden was upon plaintiffs to prove, not only that they were defendants' agents to perfect the sale, but that they were the procuring cause of the sale. We do not think the evidence in the instant case shows that this burden of proof has been satisfied. The uncontradicted testimony shows that Spradling had visited the garage several times, not only prior to the time he called at plaintiffs' office, but prior to the listing of the property by defendants with plaintiffs; that he was considering the purchase of the garage directly from the owners before there appeared in the newspaper the advertisement by plaintiffs, about which he called at plaintiffs' office in the latter part of April. He had talked with Craig, the superintendent, about the business, taking inventory, etc., prior to his visit to plaintiffs' office, and had tried to see Mr. Culp previous to said time. See English v. Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996, writ of error refused; Karr v. Brooks, 129 S. W. 160; Witt v. Byrum, 135 S. W. 687.

Brown v. Shelton, 23 S. W. 483, is a case very similar, as to facts, to the present case, and on reversing the judgment for plaintiff the court said:

"We are further of the opinion that the verdict is unwarranted by the evidence. It appears affirmatively that, whatever efforts plaintiff may have made to sell the land to Hopkins, the latter bought solely upon his own information and negotiations with defendants, and was not influenced by Shelton. There is no conflict of testimony upon this point, though there is a difference between the testimony of Hopkins and Shelton as to some things that transpired between them; but Shelton's testimony does not conflict with Hopkins' statement concerning his purchase, and the inducement which led him to make it."

In Witt v. Byrum, supra, it is said:

"It is unnecessary to cite authorities to sustain the proposition that, before a broker can recover commissions, he must show that he was the efficient and procuring cause of the sale."

In 9 Corpus Juris, under the head of "Brokers," p. 644, the author says:

"The burden of proof is on plaintiff to prove matters constituting his cause of action. Thus plaintiff bears the burden of proving that he was employed by defendant or by his duly authorized agent. * * * Plaintiff also bears the burden of proving that his efforts were the procuring cause of the transaction entered into by defendant and plaintiff's customer."

In the same volume, page 611, of Corpus Juris, the following is said:

"The fact that the transaction which the broker was authorized to negotiate is finally consummated does not of itself entitle the broker to a commission; he must have been the procuring cause of the transaction, unless there is some agreement between him and his principal to the contrary, else no compensation is due. This is true although the broker had negotiated with the person with whom the principal finally contracted; the fact that a broker finds a customer with whom the principal closes a contract without the broker's further aid does not give him a right to a commission, unless he was the procuring cause of the transaction."

In Burch v. Hester et al., 109 S. W. 399, the broker sued the owner of certain real estate to recover a commission alleged to be due him for his efforts in making the sale. The broker, who had the property listed, mentioned it to a prospective customer, but did not close any contract for its sale. Some two weeks later the prospective buyer and the owner consummated the sale. Judgment was rendered for the broker in the trial court, but the Court of Civil Appeals reversed and rendered the case for defendant, with the following statement:

"Before the broker can lay claim to commissions for a sale, he must produce a purchaser who is ready, willing, and able to take the property upon the terms fixed by the owner or employer. He must be the efficient agent or procuring cause of the sale. His efforts must result in a sale of the property. These rules prevail in all cases where brokers are claiming commissions for sales made by them, and would have peculiar application in a case where the terms of the contract required, not only the finding of a purchaser, but a sale to him by the broker, and in which it was specially agreed that no commissions should be paid unless the sale was actually made by the agent or broker."

In the instant case the contract between plaintiff and defendants provided that a commission would be due if plaintiffs were instrumental in the sale of the property, and the language used in the last cited case is especially applicable.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded.

### On Motion for Rehearing.

[1] Appellees have filed their motion for rehearing, in which they call our attention to the fact that, under the terms of the contract between plaintiffs and defendants below, plaintiffs were not required to show that they were the procuring cause of the sale of the property listed, but only that they were "instrumental in the sale." The appellees concede that this distinction was not stressed in their original brief, and, as the trial court found that plaintiffs were the "procuring cause" of the sale, the facts that plaintiff assumed a less burden in this case than is usually imposed upon the broker escaped our attention.

[2] The contract, signed by defendants, provided that defendants would pay the agreed commission to plaintiffs "in case they are instrumental in the sale of the same." "Instrumental" is defined as "serviceable, helpful, as instrumental in promoting an object"—Dictionary. Plaintiffs' testimony showed that Roy S. Jordan accompanied Spradling to the garage, explained to him the business and the terms of sale, etc. Even though Spradling had known for three months that this property was for sale, and had visited the garage several times and talked to the foreman in charge, yet he had not yet traded, and had not yet seen either of the plaintiffs. We are unable to say that the evidence does not support plaintiffs' contention that they were "instrumental" in making the sale. See Gardner v. Eldridge, 149 Mo. App. 210, 130 S. W. 403; Black v. Wilson, 187 S. W. 493 (5); Piper v. Allen (Mo. App.) 219 S. W. 98. In the last-cited case, the court said:

"This suit is not on the ordinary broker's contract to find a purchaser or to effect a sale, but is for services rendered in assisting the defendants in making a sale of certain property. His right to recover, therefore, did not depend upon whether he was the procuring cause of the sale, but whether plaintiff did assist," etc.

See, Kurtz v. Payne, 156 Iowa, 376, 135 N. W. 1075, 1077, for the distinction between a broker's being "instrumental" in making the sale, and being the "procuring cause" of the sale.

[3] The judgment heretofore rendered will be set aside, and the judgment below will be in all things affirmed. We do not think any error was committed by the trial court in dismissing the suit against defendant W. A. Reynolds, who had not been served with citation. Culp and Reynolds were liable jointly and severally, if at all, and if Reynolds can later be found Culp may recover against him for one-half of the amount which he may be required to pay on this judgment.